UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD APPEL,<br><br>                          Plaintiff,<br><br>v.<br><br>ROBERT S. WOLF,<br><br>                          Defendant. | Case No.: 3:18-cv-814-L-BGS<br><br>**ORDER DENYING DEFENDANT'S SPECIAL MOTION TO STRIKE [Doc. 5]** |

Pending before the Court is the Special Motion to Strike filed under California's Anti-SLAPP (Strategic Lawsuit Against Public Participation) statute by Defendant Robert S. Wolf ("Defendant"). *See* Doc. 5. The motion is fully briefed. The Court finds this motion suitable for disposition on the papers without oral argument under Civil Local Rule 7.1.d.1. For the reasons set forth below, Defendant's Anti-SLAPP motion is **DENIED**.

## I.    Background

In June 2017, Plaintiff Howard Appel ("Plaintiff") registered the highest bid for certain real property in Fiji in a luxury residential real property auction. However, a dispute subsequently arose between Plaintiff, the seller of the property, and the auctioneer (Concierge).

In July 2017, Concierge initiated an arbitration proceeding in New York against the seller. Concierge engaged Defendant for representation in the dispute. In October 2017, Plaintiff initiated a separate arbitration proceeding against Concierge in New York, for which Defendant was also engaged. Subsequently, Plaintiff withdrew his arbitration demand and, on November 8, 2017, filed suit against Concierge in the United States

District Court for the Southern District of California (the "SDCA lawsuit"). Concierge engaged Capobianco Law Offices, P.C. ("CLO") to defend the SDCA lawsuit and file motions in efforts to have the action sent to arbitration in New York or the United States District Court for the Southern District of New York.

On November 27, 2017 Defendant sent an email to Joseph Preis, Plaintiff's principal counsel; four additional attorneys were copied on Defendant's email, two from Preis' law firm and two attorneys for Concierge. In the email, Defendant first asked Preis to engage in settlement discussions with Concierge concerning the SDCA lawsuit. Defendant went on to imply that he is familiar with Plaintiff from Defendant's prior work, stating "[Plaintiff] had legal issues (securities fraud) along with Montrose Capital and Jonathan Winston who were also clients [of Defendant] at the time." After asking Preis to send Plaintiff regards, Defendant expressed his intention to speak with Preis soon.

As a result of Defendant's email, on April 27, 2018, Plaintiff filed a Complaint against Defendant alleging libel per se. On two separate occasions, Plaintiff's counsel asked Defendant to publish a retraction of the statement made in the email, but Defendant refused to do so and has not apologized for the false statement made in the email. On July 2, 2018, Defendant filed the instant motion. Briefing on this motion was stayed while the magistrate judge determined whether early discovery was needed before the motion could be considered. On December 27, 2018, Defendant declared, through his counsel, that he was abandoning the following challenges: (1) Plaintiff cannot satisfy his burden to present competent evidence establishing success on the merits; and (2) Plaintiff's Complaint must be stricken unless Plaintiff establishes a probability that he will prevail by producing competent evidence in support of his claims. On January 25, 2019, the magistrate judge concluded that discovery was not required because the instant motion was a purely legal challenge grounded in the application of Federal Rule of Civil Procedure 12(b)(6). On April 10, 2018, the Court overruled Plaintiff's objection to the magistrate judge's order and set a briefing schedule for the instant motion. The motion is now fully briefed and ready for disposition.

///

## II.    <u>Legal Standard</u>

"California's anti-SLAPP statute authorizes a 'special motion to strike' any 'cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue.'" *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1119 (9th Cir. 2017) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)).  When evaluating an anti-SLAPP motion, a court first determines whether the defendant has shown the challenged claim "aris[es] from activity taken 'in furtherance' of the defendant's right of petition or free speech." *Ibid.*  "If so, the burden shifts to the plaintiff to show 'a [reasonable] probability of prevailing on the challenged claims.'" *Safari Club Int'l, supra,* (quoting *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010)).

In ruling on an anti-SLAPP motion that challenges legal deficiencies in a complaint, the Court must apply the pleading standards applicable on a Rule 12(b)(6) motion to dismiss. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  Accordingly, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). Even if doubtful in fact, factual allegations are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks and citations omitted). On the other hand, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Id*.; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

## III.    <u>Discussion</u>

## A.    <u>Cal. Civ. Proc. § 425.16</u>

"A defendant who files a special motion to strike bears the initial burden of demonstrating that the challenged cause of action arises from protected activity."

3:18-cv-814-L-BGS

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 35 Cal.Rptr.3d 31, 38 (Cal. Ct. App. 2005) (citations omitted). "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." *City of Coati v. Cashman*, 29 Cal.4th 69, 78 (Cal. 2002) (citations omitted) (emphasis in original). Under California Code of Civil Procedure subsection 425.16(e), an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Defendant contends his email was a protected communication protected under section 425.16(e) because it was, in part, an invitation to engage in settlement discussions of pending litigation. In reliance on *GeneThera, Inc. v. Gould Prof'l Corp.*, 171 Cal.Rptr.3d 218, 222-23 (Cal. Ct. App. 2009), Defendant asserts that a settlement offer is protected activity. Defendant heavily relies on *Dowling v. Zimmerman*, 103 Cal.Rptr.2d 174, 190 (Cal. Ct. App. 2001) in contending that his challenged email falls within the scope of an attorney's protected free speech and petitioning activities. In *Dowling*, Dowling's complaint alleged that Zimmerman defamed Dowling by disparaging his reputation among landlord and tenant business communities through unspecified words and actions. *Id.* at 189. Dowling also alleged that Zimmerman knowingly misrepresented and concealed material facts while negotiating the stipulated settlement of Dowling's third unlawful retainer action against Zimmerman's clients. *Ibid.* Dowling also claimed emotional

distress based on Zimmerman "publish[ing] a false letter[]" about Dowling. *Ibid.* Zimmerman filed an anti-SLAPP motion contending that the complaint was a meritless attempt to punish her for helping her clients exercise their right to petition the courts on public issues of safety and nuisance pursuant to Section 425.16(e)(2) & (4). *Ibid.*

The *Dowling* court found that the complaint and evidence supporting Zimmerman's anti-SLAPP motion demonstrated each cause of action arose from Zimmerman's actions: negotiating a stipulated settlement, writing and publishing the letter, all while acting in her capacity as counsel for her clients. *Ibid.* In support of her anti-SLAPP motion, Zimmerman submitted her own declaration, the declarations of her clients, documentary evidence including the letter being challenged in the underlying SLAPP suit, and a harassment restraining order that one of her clients obtained against Dowling. The court highlighted that Zimmerman's declaration confirmed she negotiated a stipulated settlement of the unlawful detainer action. *Id.* at 189. The court also pointed out that Zimmerman wrote the challenged letter, in her capacity as her clients' lawyer, in which she: (1) identified herself as her clients' counsel, (2) provided information about the unlawful detainer dispute between Dowling and her clients, and (3) referred to various forms of harassment Zimmerman's clients endured from Dowling. *Id.* at 189-90. The court found that the letter was written in connection the unlawful detainer action and addressed public issues of nuisance and safety. *Id.* at 190. Additionally, the court recognized that Zimmerman's purpose for writing the challenged letter was clear, to advise the governing authority of the potential nuisance and safety concerns. *Ibid.* Accordingly, the California Court of Appeal concluded that Zimmerman satisfied Section 425.16(e)(2) by showing that Dowling's action stemmed from statements she "made in connection with an issue under consideration or review by a . . . judicial body" and were conducted "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue" pursuant to Section 425.16(e)(4). *Id.* at 190.

Our facts do not align with the settlement negotiation cases provided by Defendant. While it is undisputed that Plaintiff's libel per se claim is based on Defendant's November

27, 2017 email, the Complaint and evidence supporting the instant motion fail to demonstrate the challenged email was sent in the settlement negotiation context. The cases upon which Defendant relies to prove his email was protected are not persuasive against our factual backdrop. *See Seltzer v. Barnes*, 106 Cal.Rptr.3d 290, 297-98 (Cal. Ct. App. 2010); *see also GeneThera, Inc.*, 90 Cal.Rptr.3d at 222-23. Notably, none of the cases cited by Defendant were grounded in libel per se and each are factually distinguishable. Unlike the communications in *Seltzer* and *GeneThera, Inc.*, Defendant's email was neither a settlement offer nor contained settlement terms. In fact, as highlighted in the Complaint, Defendant's email represented that no settlement discussion would transpire via email. Unlike the alleged libelous statement here, the challenged communications in *Navarro v. IHOP Properties, Inc.*, 36 Cal.Rptr.3d 385, 391 (Cal. Ct. App. 2005) were "promises [made] in exchange for stipulation of judgment." As the court stated in *Dowling*, each cause of action arose from Zimmerman's actions in her capacity as counsel for her clients in connection the unlawful detainer action.

However, our facts do not unfold in the settlement negotiation context; rather, the allegedly libelous statement arises in the context of a pre-filing discussion before calendaring a motion to compel arbitration. Defendant failed to raise any issues or information pertinent to the the New York arbitration or Plaintiff's Southern District of California lawsuit. Moreover, Defendant's pleadings reveal that he was simply trying to establish a rapport with Appel's counsel when he made the allegedly libelous statement. After review of the challenged email, the Court finds the email was not sent to further settlement negotiations as it is evident that no settlement discussion had commenced between the parties. Considering Defendant explicitly stated that settlement discussions will not commence via email, the Court finds that the allegedly libelous statement was not made in furtherance of settlement negotiation. Notably, none of the issues touched on in Defendant's email were "under consideration or review by a . . . judicial body." Defendant's email neither was sent in furtherance of his constitutional right to petition or

speak in connection with a public issue.  As such, the Court finds that Defendant's email does not fall within subsection 425.16(e).

## B.    <u>Litigation Privilege</u>

Statements made within the protection of California's litigation privilege of Civil Code section 47(b) are also entitled to the benefits of section 425.16.  *Healy v. Tuscany Hills Landscape & Recreation Corp.*, 39 Cal.Rptr.3d 547, 549 (Cal. Ct. App. 2006).  "The question of whether the litigation privilege should, or should not, apply to particular communications has always depended upon a balancing of the public interests served by the privilege against the important private interests which it sacrifices."  *Rothman v. Jackson*, 57 CalApp.4th 1134, 1146-47.  "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Silberg v. Anderson*, 50 Cal.3d 205, 212 (Cal. 1990).

> "[T]he 'connection or logical relation' which a communication must bear to litigation in order for the privilege to apply, is a *functional* connection. That is to say, the *communicative act*-be it a document filed with the court, a letter between counsel or an oral statement-must function as a necessary or useful step in the litigation process and must serve its purposes.  This is a very different thing from saying that the communication's *content* need only be related in some way to the subject matter of the litigation . . ."

*Rothman*, 57 Cal.App.4th at 1146.

The issue here is whether Defendant's alleged libelous statement, on which Plaintiff's claim is based, is covered by California's litigation privilege.  Defendant asserts that the litigation privilege is an absolute defense to Plaintiff's libel action by asserting (1) the email was transmitted after Plaintiff commenced the New York arbitration, (2) the email clearly intended to explore settlement opportunities, and (3) the email is absolutely protected because it was made during the course of litigation.  Defendant relies on this Court's recent decision in *Welk Resort Group, Inc. v. Reed Hein & Associates, LLC*, 2019

WL 1242446, at *8 (S.D. Cal. Mar. 18, 2019) to further his assertion that the litigation privilege's bounds are expansive. However, this Court did not touch on this issue in that decision. In *Welk*, this Court nonetheless noted that "the applicability of the [litigation] privilege and the scope of its reach are based on the gravamen of [the plaintiff's] action." *Welk Resort*, 2019 WL 1242446, at *6 (citations omitted).

Plaintiff asserts that the litigation privilege does not apply because the allegedly libelous statement does not functionally relate to his underlying lawsuit against Concierge. Plaintiff relies on *Nguyen v. Proton Technology Corp.*, 69 Cal.App.4th 140, 149 Cal. Ct. App. 1999) to contend that Defendant's allegedly libelous statement is not protected because it was a "superficially litigation-related statement[]." In *Proton*, an employee left a technology company to work for its competitor and the company suspected that the new employer was improperly soliciting the company's remaining employees and customers. *Id.* at 143. An attorney for the company sent a letter to the chief executive officer of the new employer cautioning that the new employer's "recent acts of unfair competition will not be tolerated." *Ibid.* The attorney also misrepresented that the departing employee had been imprisoned "for repeatedly and violently assaulting his wife …" *Id.* at 143-44. While the employee had previously been imprisoned, none of his convictions were related to violence against his wife. *Id.* at 151. The *Proton* court found that that the statement about the employee's alleged imprisonment for crimes against his wife was not protected by section 47 as the statement was factually incorrect and "any 'connection' between such a conviction and the civil unfair competition focus of the demand letter [was], to be charitable about it, tenuous." *Ibid.* The allegedly unfair competition acts were not crimes, and "one's proclivity to engage in such practices [unfair competition] is in no way, shape or form predictable by whether he (a) beats his wife, (b) shoots at unoccupied cars, or (c) commits vandalism." *Ibid.* Therefore, the California appellate court held that the challenged statements were not reasonably related to the litigation and thus not protected by the litigation privilege. *Id.* at 152-53.

The Court is not persuaded by Defendant's assertion and agrees with Plaintiff's contention. Notably, the *Proton* court made clear that "section 47(b) does not prop the barn door wide open for any and every sort of [litigation] charge or innuendo, especially concerning individuals." *Proton*, 69 Cal.App.4th at 150. With that in mind, this Court reasons that, while the litigation privilege is potentially an absolute defense, the privilege is not a blanket protection to shield all of a speaker's potentially gratuitous, harmful, or defamatory statements in a communication, even if sent during the course of litigation, when the statement bears no relation to subject matter of the litigation. The gravamen of Plaintiff's lawsuit against Concierge centered around Concierge's allegedly fraudulent inducement and concealment of materials facts related to Plaintiff's high bid for, winning of, and $285,000 deposit for a multi-million-dollar luxury residential property and its pre-auction knowledge of the property owner's refusal to sell the property. As such, the bounds of the litigation privilege apply only to those communications having a functional relationship with that action. Like *Proton*, Defendant's statement was factually inaccurate as he concedes that he was referring to a different Howard Appel. Similar to the court in *Proton*, this Court finds that Concierge's "proclivity to engage in such practices [fraud] is in no way, shape, or form predictable by whether" Plaintiff had securities fraud issues ten years ago. Although Defendant attempts to persuade the Court that his entire email was an attempt to settle the Concierge case, the Court finds that Defendant's alleged libelous statement was not reasonably related to the Concierge litigation. For the foregoing reasons, this Court concludes that Defendant's alleged libelous statement is not protected by the litigation privilege.

Accordingly, the Court finds that Defendant failed to carry the initial burden of presenting of presenting a prima facie case that Plaintiff's suit arose from an "act in furtherance of [Defendant's] right of petition or free speech."

### C.    Probability of Prevailing

Notwithstanding Defendant's failure to carry the initial burden of proof, the Court finds that Plaintiff established a probability of prevailing as the Complaint and other

evidence present a libel per se action with minimal merit. To survive dismissal and show a reasonable probability of prevailing, a plaintiff must establish that the complaint is legally sufficient and supported by sufficient facts to sustain a favorable judgment if the facts are credited. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (citations omitted). "The district court, in making its decision, considers the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Planned Parenthood of Fed'n of America, Inc. v. Ctr. for Medical Progress*, 890 F.3d 828, 833 (9th Cir. 2018) (citing Cal. Civ. Proc. Code § 425.16(b)(2)). "[A] defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantially exists to support a judgment for the plaintiff." *Metabolife Int'l*, 264 F.3d at 840 (internal quotation marks and citations omitted).

To prevail on a defamation claim under California law, a plaintiff must demonstrate (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or that causes special damage. *Taus v. Lotus*, 54 Cal.Rptr.3d 775, 804 Cal. 2007). "A statement that is defamatory without the need for explanatory matter such as an inducement, innuendo or other extrinsic fact, constitutes 'a libel on its face,'" or libel per se. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 700 (Cal. Ct. App. 2007). "Perhaps the clearest example of libel per se is an accusation of crime." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal.App.3d 377, 358 (Cal. Ct. App. 1986). When a plaintiff adequately alleges a libel per se claim, damage to plaintiff's reputation is presumed and there is no need to prove special damages. *Id.*

Here, Plaintiff has established that a reasonable probability of prevailing on her libel per se cause of action exists by presenting sufficient facts. In his Complaint, Plaintiff specifically alleges that, on November 27, 2017, Defendant sent the challenged communication to four individuals, in which the libelous statement was made. Defendant concedes that his emailed statement was false as he confused Plaintiff with a different Howard Appel. The Court finds the communication clearly implies a connection between

Plaintiff and potentially criminal conduct, securities fraud. Defendant's contention that the statement is not actionable because it does not directly or indirectly accuse Plaintiff of wrongdoing is misplaced. *See Medifast, Inc. v. Minkow*, 2011 WL 1157625 (S.D. Cal. Mar. 25, 2011), *affirmed in part, vacated in part, reversed in part by Medifast, Inc. v. Minkow*, 577 Fed.Appx. 706 (9th Cir. 2014) ("[I]t is not necessary that the publication charge the commission of a crime; it is sufficient if it so reflects on the person's integrity as to bring him or her into disrepute.") The Court finds that a false intimation that Plaintiff had securities fraud in his background, to an unsuspecting audience, would have negative, injurious ramification on Plaintiff's integrity. For the reasons stated in earlier sections, this Court has found that Defendant's communication was not privileged. Taken together, the Court finds that Plaintiff has established a reasonable probability to prevail on his libel per se claim.

**D.** **Conclusion**

For the foregoing reasons, Defendant's Special Motion to Strike is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 18, 2019

Hon. M. James Lorenz
United States District Judge