Steven Brower (SBN 93568)
 *Steve@BrowerLawGroup.com*
Lee K. Fink (SBN 216293)
 *Lee@BrowerLawGroup.com*
Pavel Kolmogorov (SBN 321018)
 *Pavel@BrowerLawGroup.com*
**BROWER LAW GROUP, APC**
23601 Moulton Parkway, Suite 220
Laguna Hills, CA 92653
Telephone: (949) 668-0825

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD APPEL,<br><br>    Plaintiff,<br><br>  vs.<br><br>ROBERT S. WOLF,<br><br>    Defendant. | Case No. 3:18-cv-00814-L-BGS<br><br>**PLAINTIFF HOWARD APPEL'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO DEPOSITION QUESTIONS** |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 5

II.  BACKGROUND ............................................................................................ 6

III. QUESTIONS ABOUT MILLENNIUM ARE NOT RELEVANT. ............... 9

    A. Wolf's Questions About Millennium's Medicare Billing Practices Are Improper. ................................................................. 9

    B. Wolf Failed to Show that Millennium's Financial Transactions Led to Legal Issues (Securities Fraud) for Appel. ...................... 10

    C. Wolf Failed to Show any Basis for Impeachment. ............................ 12

IV. APPEL CANNOT BE COMPELLED TO WAIVE THE ATTORNEY-CLIENT PRIVILEGE FOR HIMSELF OR FOR MILLENNIUM. .............. 13

    A. The Attorney-Client Privilege Outweighs a Party's Needs for Discovery. ........................................................................................ 13

    B. Appel Did Not Place Privileged Communications at Issue so as to Constitute a Waiver of Privilege. .................................................. 15

        1. No Waiver of Privilege as to the Libelous Email. .................... 15

        2. No Waiver of Privilege as to Posting on the Website www.conciergeauctionsscams.com. ........................................... 17

    C. Appel Has Attorney-Client Privilege With Respect to Investigations of Millennium. .............................................................. 18

    D. Appel Has No Authority to Waive Millennium's Attorney-Client Privilege. ............................................................................................ 18

V.  WOLF IS NOT ENTITLED TO FEES ........................................................ 19

VI. CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Appel v. Wolf*
  839 Fed.Appx. 78, 80 (9th Cir. 2020) ............................................................. 7, 16

*Barnes-Hind, Inc. v. Superior Court*
  181 Cal.App.3d 377, 381 (1986) ......................................................................... 16

*Beeman v. Burling*
  216 Cal.App.3d 1586, 1599 (1990) ..................................................................... 13

*Commodity Futures Trading Comm'n v. Weintraub*
  471 U.S. 343, 349 (1985) ............................................................................... 18, 19

*Contento v. Mitchell*
  28 Cal.App.3d 356, 358 (1972) ........................................................................... 16

*Licudine v. Cedars-Sinai Medical Center*
  3 Cal.App.5th 881, 891 (2016) ............................................................................ 13

*Mitchell v. Superior Court*
  37 Cal.3d 591, 610 (1984) ............................................................................. 15, 17

*Sommer v. Gabor*
  40 Cal.App.4th 1455, 1472 (1995) ...................................................................... 16

*Transamerica Title Ins. Co. v. Superior Court*
  188 Cal.App.3d 1047, 1052 (1987) ..................................................................... 14

*Treadwell v. Whittier*
  80 Cal. 574, 581 (1889) ....................................................................................... 13

*Venture Law Group v. Superior Court*
  118 Cal.App.4th 96 (2004) ............................................................................ 14, 18

**Statutes**

Cal. Civ. Code § 3294(a) ........................................................................................ 13

Cal. Civ. Code § 48a(d) .................................................................................... 13, 16

**Other Authorities**

CACI No. 1704 ................................................................................................. 13, 16

Local Civil Rule 2.1 ............................................................................................ 9, 20

**Rules**

Federal Rule of Civil Procedure Section 30(d)(3) .................................................... 19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Robert Wolf's ("Wolf") instant motion is the latest chapter in his ongoing campaign of antagonism towards Plaintiff Howard Appel ("Appel").

Indeed, this libel lawsuit arose because Wolf sent a malicious email stating that he knew Howard Appel as one of his former clients who "had legal issues (securities fraud)." But the Howard Appel who is the alleged securities fraudster is not this Plaintiff Howard Appel. When Wolf was advised of this fact and asked to retract his false statement and apologize, he refused to do so, twice.

After Wolf's improvident anti-SLAPP motion was found unmeritorious by both the District Court and the Ninth Circuit, Wolf doubled down on his efforts to smear Appel by attempting to dig up dirt on Appel. Wolf issued eight massive subpoenas to various financial institutions in a fishing expedition to find information about Appel's alleged involvement in some alleged Medicare billing practices during his tenure as president of Millennium Labs. This Court quashed all eight of Wolf's subpoenas on the grounds that the discovery regarding Millennium's alleged Medicare practices was neither relevant to Wolf's truth defense that Appel "had legal issues (securities fraud) along with Montrose Capital and Jonathan Winston" nor proportional to the needs of the case.

Despite this Court's finding that discovery regarding Appel's conduct as president of Millennium is not relevant, Wolf pestered Appel with questions about Millennium when Appel sat for his deposition.

But that was the least of the misconduct displayed by Wolf throughout the deposition. Wolf himself verbally abused Appel's counsel, repeatedly taunting him to "grow up" (*see* ECF No. 77, Index No. 29) and concluding the deposition by yelling at Appel's counsel: "You're a coward, Brower. You're a coward." (*Id.*, Index No. 123.)

Beyond the shocking nature of Wolf's outbursts—the type that no judicial officer would condone if made in the Court's presence—Wolf was not even authorized to speak at the deposition. Though Wolf is a lawyer, he is not admitted to practice in this district nor is he representing himself, yet he repeatedly interjected and made arguments on the record.[1] Moreover, even though Appel was the witness, it was <u>Wolf</u> who kept asking for breaks so that he could confer with his counsel who was conducting the deposition. Even worse, Wolf's obstreperous behavior actively interfered with the collection of evidence at the deposition.

Wolf now brings this motion seeking an order compelling Appel to provide answers to questions propounded at his deposition. The Court should deny the motion in its entirety because the questions at issue are beyond the scope of permissible discovery and/or protected by the attorney-client privilege.

## II. BACKGROUND

In November 2017, Appel and Concierge Auctions, LLC ("Concierge") were in active litigation with one another. Wolf was not counsel for Concierge in that case, though he has represented Concierge in other matters. On November 27, 2017, Wolf sent an email to counsel for Appel (Joseph Preis, Jason Boss, and Benjamin Reynolds) and California counsel for Concierge (Anthony Capobianco and Derek Wallen), in which Wolf stated:

> By the way, I know Howard Appel from when I used to head the litigation side at Gersten Savage, more than 10 years ago. Howard had legal issues (securities fraud) along with Montrose Capital and Jonathan Winston who were also clients at the time. Please send him my regards.

(ECF No. 1, Compl. at ¶ 10, the "Libelous Email.")

But Wolf's former client Howard M. Appel is <u>not</u> the Howard J. Appel here. Yet Wolf refused to retract or apologize when he was advised of this fact. Appel thereafter filed this lawsuit asserting a single claim for libel. Wolf filed a special

---

[1] See ECF No. 77, Index Nos. 13, 15, 29, 43, 46, 52, 54, 106, 107, 112, 118, 119, 121, 122, and 123, for instances where someone on Wolf's side other than his counsel of record, Andrew Servais, spoke on the record.

motion to strike pursuant to the California anti-SLAPP statute, arguing that his statement was protected by the litigation privilege. The District Court denied the anti-SLAPP motion, and the Ninth Circuit affirmed that decision. Notably, the Ninth Circuit found that "Wolf's email was facially defamatory." *Appel v. Wolf*, 839 Fed.Appx. 78, 80 (9th Cir. 2020).

Faced with clear liability for his defamatory statements, Wolf chose a reprehensible strategy of engaging in a fishing expedition in the hopes of finding some basis to claim that his false statements that Appel "had legal issues (securities fraud) along with Montrose Capital and Jonathan Winston" were inadvertently true. Wolf now claims that Appel had some involvement in Medicare billing practices that became the subject of investigation of Millennium Lab Holdings II, LLC/Millennium Laboratories, LLC ("Millennium"), a company where Appel previously served as a president. In a desperate effort to smear Appel again, Wolf attempted to argue that legal issues Millennium had—that arose after Appel worked there, which Wolf did not know about, and which were not securities fraud—somehow "prove" that the Libelous Email became true, after the fact.

As part of his smear campaign, on or about June 4, 2021, Wolf issued eight massive subpoenas requesting communications between Appel and various financial institutions across the country concerning a credit agreement between Millennium and several lenders. Appel was required to retain local counsel in several judicial districts to challenge the subpoenas. The challenges to the subpoenas were eventually transferred and consolidated in this Court.

On November 9, 2021, this Court entered an order quashing all eight subpoenas, finding that Wolf's requested third-party discovery was neither relevant nor proportional to the needs of the case, and rejecting Wolf's contention that he is entitled to discovery of any negative information about Appel as part of his effort to mount a truth defense. (A copy of the Court's November 9, 2021 Order is attached hereto as Exhibit A, the "Quash Order.")

On January 13, 2022, Appel sat for his deposition. Given that the Court had found information about Millennium was irrelevant to Wolf's truth defense and beyond the scope of permissible discovery, Appel's counsel stated on multiple occasions that questions about Millennium will not be answered. (ECF No. 77, Index Nos. 12, 59, 63.) Rather than sit through the questions merely to place them on the record, Appel's counsel proposed, on multiple occasions, to streamline the deposition with a stipulation that Wolf will forgo asking questions related to Millennium and Appel will not object that Wolf failed to ask those questions at the deposition. (*Id.*) But Wolf elected to waste everyone's time and proceeded to ask Appel about Millennium anyway.[2] As discussed below, those questions were improper because Appel's conduct at Millennium was and continues to be irrelevant to this case.

Indeed, Wolf's conduct during the entire deposition was improper. Not only did counsel waste the parties' time in posing each specific question, but the parties spent at least one hour and 24 minutes in breaks from the deposition that Wolf called for personally, all to consult with his own attorney. (ECF No. 77, Index No. 15 (14 minutes), No. 43 (36 minutes), No. 46, No. 52 (10 minutes), No. 54 (16 minutes), and No. 106 (eight minutes).) Although not admitted to practice in this district, Wolf himself repeatedly argued points, called for breaks in the proceedings to consult with his attorney, and instructed his attorney on how to pose questions. (*Id.*, *see also, e.g.*, ECF No. 77, Index Nos. 118, 119, 121.) Indeed, Wolf's own obstreperous behavior interfered with obtaining evidence. For example, in the following exchange, it was Wolf's own interruption of the proceedings that prevented the witness from making a response:

> Q.   And what are – and who on that email chain in Exhibit 1 was unaware that Mr. Wolf's statement was untrue?

---

[2] Appel's counsel's proposed stipulation to streamline the deposition also extended to questions which would implicate attorney-client privileged communications. (ECF No. 77, Index Nos. 59, 63.) But Wolf ignored the offer and proceeded with the unproductive exercise of asking Appel about his communications with his attorneys Preis, Boss, and Reynolds. (*See, e.g.*, ECF No. 77, Index Nos. 16-28, 39-41, 57-62.)

> MR. BROWER: Objection. Attorney-client privilege as to his attorneys. He can answer as to Capobianco and, um, the other gentleman, to the extent of his knowledge.
>
> MR. WOLF: Andrew, can we consult one second? How can you claim damages for something that you're going to shield --. . .

(ECF No. 77, Index Nos. 53-54, Tr. 75:7-16.)

Wolf's actions also violated this district's Code of Conduct, adopted in Local Civil Rule 2.1. Wolf's outbursts included taunting Appel's counsel to "grow up" and yelling at him: "You're a coward, Brower. You're a coward." (ECF No. 77, Index Nos. 29, 123.)

After nearly five hours of harassing questioning, almost all of which called for privileged information or related to issues which this Court had already found irrelevant, and numerous and lengthy outbursts from Wolf personally, as well as interruptions from Wolf's law partner who is also not of record in this case, Appel's lawyer finally suspended the deposition in order to obtain relief from the Court.

## III. QUESTIONS ABOUT MILLENNIUM ARE NOT RELEVANT.

### A. Wolf's Questions About Millennium's Medicare Billing Practices Are Improper.

In quashing Wolf's eight subpoenas seeking information about Millennium, the Court noted that Wolf is not allowed to conduct discovery regarding any topic as part of his effort to present a truth defense, but that the "discovery must be relevant to the truth of the statement." (Quash Order at 15.) The Court observed that:

> the Millennium allegations in Wolf's briefing regarding false Medicare claims and illegal kickbacks at Millennium under Appel have no connection to Wolf's statement that Appel had 'legal issues (securities fraud) along with Montrose Capital and Jonathon Winston.' [] Wolf cannot simply find something completely different, but equally negative about Appel, and seek discovery regarding it. It must still be of some consequence to the truth of the statement and this discovery is not. This alone is sufficient reason to find the discovery sought is irrelevant.

(*Id.* at 16.)

Despite the Court's clear holding that Wolf's truth defense cannot be supported by substituting alleged Medicare fraud for securities fraud, Wolf continues to seek information about Millennium's Medicare billing practices. (ECF No. 77, Index Nos. 124-138.) Those questions were propounded after Appel had left the deposition, but nevertheless they are contrary to the Court's finding regarding the permissible scope of discovery.

### B. Wolf Failed to Show that Millennium's Financial Transactions Led to Legal Issues (Securities Fraud) for Appel.

Wolf did not ignore the Quash Order altogether, as evidenced by his decision to devote a large portion of his brief to a discussion of Millennium's alleged fraudulent financial transactions. (Mot. at 5-10.) But Wolf still cannot establish that those financial transactions are relevant to the truth of his statement that Appel "had legal issues (securities fraud) along with Montrose Capital and Jonathan Winston who were also clients at the time."

Wolf argues that questions regarding Millennium seek information relevant to his truth defense because at the time he sent the Libelous Email, "the Millennium bankruptcy trustee initiated a lawsuit months earlier alleging securities fraud against the banks who worked with Appel." (Mot. at 6, emphasis added.) Wolf further states that "the trustee also filed a complaint in the Millennium bankruptcy against the same banks." (*Id.* at fn. 4, emphasis added.)

Those lawsuits might be evidence that the banks "had legal issues (securities fraud)," not Appel. Wolf attached copies of the two complaints filed by the bankruptcy trustee to demonstrate that Appel "had legal issues (securities fraud)," but Appel was not named as a defendant in either matter.

In the trustee's first complaint, the eight defendants were: J.P. Morgan Chase Bank, N.A.; J.P. Morgan Chase Securities LLC; Citibank Global Markets Inc.; Citibank, N.A.; BMO Capital Markets Corp.; Bank of Montreal; Suntrust Robinson Humphrey, Inc.; and Suntrust Bank. (ECF No. 80-1, Mot. Exh. 2.)

In the trustee's second complaint, the four defendants were: J.P. Morgan Chase Bank, N.A.; Citibank N.A.; BMO Harris Bank, N.A.; and Suntrust Bank. (ECF No. 80-1; Mot. Exh. 6.)

Wolf noted that there were "lawsuits against Millennium officers/owners including Appel for RICO, RICO conspiracy, fraud and deceit, aiding and abetting fraud, conspiracy to commit fraud, and restitution claims." (Mot. at 6-7, fn. 5.) However, there was no indication that a claim for securities fraud was asserted against Appel. Similarly, Wolf quoted from a 2012 DOJ letter to Millennium regarding an investigation "in connection with billing false or fraudulent claims to federal health care programs and/or other payors; payment of remuneration to physicians and/or others to induce referrals of laboratory tests to Millennium, and interference with witnesses and /or destruction of evidence." (Mot. at 8.) Again, there was no indication that Appel was being pursued for securities fraud. Taken altogether, Wolf's own evidence shows that Millennium's alleged fraudulent financial transactions did not give rise to "legal issues (securities fraud)" for Appel.

Wolf contends that his statement is true because "Appel sold securities to investors while making material misstatements under the securities fraud statutes by claiming Millennium was compliant with law and standards promulgated by regulatory agencies." (Mot. at 8-9, footnote omitted.) But that still fails to show how Appel then "had legal issues (securities fraud)."

As this Court clearly explained in the Quash Order: "Alleged fraudulent conduct as president of Millennium <u>does not mean that Appel had legal issues</u> regarding such alleged fraudulent conduct." (Quash Order at 22 (emphasis added).) The Court differentiated between "legal issues" and "factual issues," and observed that "discovery about Appel's fraudulent conduct seeks evidence to <u>prove facts</u> that he was so involved [but] does not address how the requested discovery is relevant to legal issues that Appel supposedly had." (*Id.* (emphasis added).) As such, questions regarding Appel's involvement in Millennium's alleged fraudulent financial

transactions are irrelevant because they go towards a factual issue rather than a legal issue.

Moreover, Wolf made a specific false statement that Appel "had legal issues (securities fraud) <u>along with Montrose Capital and Jonathan Winston who were also clients at the time</u>." None of the information that Wolf is seeking to discover shows that Appel had legal issues related to securities fraud, much less that such issues were connected to Montrose Capital or Jonathan Winston, or that Appel was a client of Wolf's. Wolf is attempting to prove the truth by grafting together various legal proceedings to show that, on the one hand, Appel "had legal issues" arising out of one set of conduct (Medicare billing), and on the other hand, Millennium's alleged securities fraud gave rise to "legal issues" for another set of parties (the banks). As the Court observed, the truth defense or any defense based on substantial similarity to the truth should not be interpreted "to be quite as unconnected from the actual statement at issue." (Quash Order at 21.) For those reasons, Wolf has failed, again, to demonstrate that Appel's tenure at Millennium is relevant to this case, and all questions regarding Millennium should be stricken.

### C. **Wolf Failed to Show any Basis for Impeachment.**

Unable to show that information about Millennium is relevant to his defense, Wolf raised the issue of impeachment in the introduction of his motion (Mot. at 2-3), but wisely dropped the issue, never bothering to argue that point in his motion. That alone is sufficient to demonstrate that the discovery Wolf seeks is not necessary for impeachment. But to the extent Wolf relies on the argument, it has two fatal flaws. First, all of Wolf's questions related to acts by Millennium, not by Appel. Even after Appel terminated the deposition, and Wolf continued to ask questions, all of the questions were about Millennium's actions, not Appel. (ECF No. 77, Index Nos. 124-138.) Even when trying to create a record, Wolf never asked what Appel did. Because the actions of another person or entity cannot be used as impeachment, the motion to compel must fail.

Second, even if Wolf could prove that Millennium's actions were somehow attributable to Appel (and Wolf never even posed those questions), and even if the Court determined that the issue was not confusing, misleading, or unfairly prejudicial under Rule 403 of the Federal Rules of Evidence, the issue is still irrelevant because Appel's credibility is not at issue. The Libelous Email was false; Wolf's efforts to make it appear true *ex post* have been rejected by this Court in the Quash Order; the Ninth Circuit has held that the Libelous Email was facially defamatory; and Appel seeks only general damages. General damages flow from the injuries received and are implied by law. *Licudine v. Cedars-Sinai Medical Center*, 3 Cal.App.5th 881, 891 (2016) (citing *Treadwell v. Whittier*, 80 Cal. 574, 581 (1889)); *Beeman v. Burling*, 216 Cal.App.3d 1586, 1599 (1990). In the context of libel, general damages include "loss of reputation, shame, mortification, and hurt feelings." Cal. Civ. Code § 48a(d). Even the truth of Appel's claims as to his mortification are not at issue. Nor is Appel's credibility at issue as it relates to punitive damages, where the inquiry is the degree of Wolf's maliciousness, not Appel's. Cal. Civ. Code § 3294(a); CACI No. 1704.

## IV. APPEL CANNOT BE COMPELLED TO WAIVE THE ATTORNEY-CLIENT PRIVILEGE FOR HIMSELF OR FOR MILLENNIUM.

Wolf argues that Appel should not be allowed to invoke of the attorney-client privilege and continue to proceed with this lawsuit because those are inconsistent positions. Wolf's contention has no support in the law.

### A. The Attorney-Client Privilege Outweighs a Party's Needs for Discovery.

Wolf contends that Appel cannot assert the attorney-client privilege because doing so deprives Wolf of his right to present to the jury all relevant information consistent with his trial strategy. (Mot. at 14.)

It is most important to note that no relevant evidence is being withheld on the basis of the attorney-client privilege. As the Ninth Circuit has already noted, the

Libelous Email is facially defamatory and speaks for itself (*e.g.*, publication to persons other than plaintiff). Appel is entitled to recover presumed damages, so no evidence of damages needs to be presented. To the extent Wolf has any truth defense, it is premised on the existence of "legal issues" rather than "factual issues" relating to securities fraud, which can and should be supported by matters of public record. Moreover, on numerous questions on which the attorney-client privilege was asserted, Appel still provided an answer based on the extent he knew the information outside of privileged communications. (ECF No. 77, Index Nos. 30, 32-37, 42, 44-45, 47-48, 50-51, 55-57, 64-65, 68, 73, 75, 81, 84-86.)

To the extent that privilege is an issue, California courts place great weight on the protection of the attorney-client privilege, prioritizing it over a party's asserted need for relevant evidence. In *Venture Law Group v. Superior Court*, 118 Cal.App.4th 96 (2004), cited by Wolf, the court explained that "the privilege is not vitiated by the fact that its exercise may occasionally suppress relevant evidence. It has been recognized that the search of truth must sometimes give way to the purposes of the privilege. Thus, the privilege is not to be set aside when one party seeks verification of the authenticity of its adversary's position." *Id.* at 105 (quoting *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal.App.3d 1047, 1052 (1987)) (internal citations and quotation marks omitted).

Policy considerations also weigh against Wolf's request that Appel waive attorney-client privilege or face exclusion of evidence. Wolf suggests that Appel is abusing the attorney-client privilege by using it as a sword and a shield, but it is Wolf who is taking advantage of the attorney-client privilege. Wolf sent the Libelous Email to counsel for Appel (Messrs. Preis, Boss, and Reynolds) and California counsel for Wolf's client Concierge (Messrs. Capobianco and Wallen),[3] parties who

---

[3] It should be noted that Appel's assertion of the attorney-client privilege in no way affects Wolf's ability to gather evidence relating to Messrs. Capobianco and Wallen. In contrast, Appel cannot provide testimony as to Messrs. Capobianco and Wallen because he does not interact with counsel for Concierge.

are in active litigation. Wolf undoubtedly expected both sides to invoke the attorney-client privilege, thereby providing him safe harbor for his defamatory statement.[4] To require the plaintiff to waive attorney-client privilege in order to pursue a defamation claim under these circumstances would effectively open the door for people to make defamatory statements to counsel about their client with impunity. Here, Wolf engineered a situation in which the attorney-client privilege would necessarily be implicated. "[T]o permit discovery of the attorney-client communications in this instance raises an equally troubling concern" because "[s]uch a holding would potentially uphold a harassment tactic." *Mitchell v. Superior Court*, 37 Cal.3d 591, 610 (1984).

### B. Appel Did Not Place Privileged Communications at Issue so as to Constitute a Waiver of Privilege.

#### 1. *No Waiver of Privilege as to the Libelous Email.*

"Relevant case law makes it clear that mere disclosure of the fact that a communication between client and attorney had occurred does *not* amount to disclosure of the specific content of that communication, and as such does not necessarily constitute a waiver of the privilege." *Mitchell v. Superior Court*, 37 Cal.3d at 602 (italics in original). As such, the fact that Appel's counsel provided Appel with a copy of the Libelous Email does not amount to a waiver of privilege as to any confidential attorney-client communications regarding the Libelous Email.

Wolf argues that Appel has waived the attorney-client privilege by seeking damages as to each addressee of the Libelous Email, which included three of Appel's own attorneys and two of Wolf's client Concierge's attorneys. (Mot. at 12-13.) But Wolf ignored the fact that Appel is seeking general damages as to each of the addressees of the Libelous Email and for his own upset, anger, annoyance and concern. (ECF No. 1, Compl. at ¶¶ 16, 17.)

---

[4] No doubt Wolf was also likely expecting the litigation privilege to shield him from liability for his defamatory statement before the District Court and the Ninth Circuit rejected his position and denied his anti-SLAPP motion.

California law provides that if the plaintiff "can plead and prove libel per se [he] need not prove special damages: '[D]amage to plaintiff's reputation is <u>conclusively presumed</u> and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages' including, in an appropriate case, punitive damages." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal.App.3d 377, 381 (1986) (quoting *Contento v. Mitchell*, 28 Cal.App.3d 356, 358 (1972)) (emphasis added). Moreover, presumed damages "include reasonable compensation for loss of reputation, shame, mortification, and hurt feeling. No definite standard or method of calculation is prescribed by law by which to fix reasonable compensation for presumed damages, and no evidence of actual harm is required. Nor is the opinion of any witness required as to the amount of such reasonable compensation." *Sommer v. Gabor*, 40 Cal.App.4th 1455, 1472 (1995); *see also* CACI No. 1704 Defamation per se—Essential Factual Elements (allowing recovery of "assumed harm" even if plaintiff has not presented evidence of any actual damages).

"Wolf's email was facially defamatory." *Appel v. Wolf*, 839 Fed.Appx. 78, 80 (9th Cir. 2020). Accordingly, Appel is entitled to a presumption that his reputation has been damaged as to each of the five addressees without having to put himself, his three attorneys, or Concierge's two attorneys on the stand to establish damages. It should be noted that the damage to Appel's reputation is a conclusive presumption, not just a rebuttable presumption. *Barnes-Hind, Inc.*, 181 Cal.App.3d at 381 ("damage to plaintiff's reputation is conclusively presumed"). As such, Wolf is not even permitted to mount a rebuttal, and his protestation that Appel's invocation of the attorney-client privilege would deprive him of relevant evidence on the issue of damages is of no moment. Wolf's argument might have been apposite had Appel sought to recover special damages according to proof, but Appel is not doing that here.

As for "shame, mortification, or hurt feelings," Appel is also entitled to recover presumed damages in those respects. Cal. Civ. Code § 48a(d); CACI No. 1704.

### 2. *No Waiver of Privilege as to Posting on the Website www.conciergeauctionsscams.com.*

Wolf also contends that Appel has waived the attorney-client privilege regarding a posting on the www.conciergeauctionsscams.com website which published verbatim Wolf's libelous statement. (Mot. at 11-12.) Specifically, the posting states:

> Federal Lawsuit vs. Concierge's attorney Robert Wolf, Case No. 18-cv-0814-L-BGS, alleging he gratuitously defamed Howard Appel (and others) in writing, in after and in response to Messrs. Appel and Cohen's lawsuit against Concierge, through the following statement: "By the way, I know Howard Appel from when I used to head the litigation side at Gersten Savage, more than 10 years ago. Howard had legal issues (securities fraud) along with Montrose Capital and Jonathan Winston who were also clients at the time. Please send him my regards."

(Mot. at 3.) Wolf seems to suggest that because Appel testified that he was not upset to see the libelous statement in this context of this web posting, Appel was not actually upset about the Libelous Email. (Mot. at 4.)

But context is key. Appel was forced to disclose the details of the Libelous Email in order to pursue this action. And in the context of the web posting, the libelous statement is prefaced by a statement signaling that such defamatory language has subjected the speaker to a defamation action. Coupled with the fact that Appel is entitled to recover presumed damages, there is no relevancy to this line of questioning.

As to the issue of privilege, Wolf seems to argue that the existence of the web post constitutes a waiver of any privileged attorney-client communications regarding the posting. Wolf's position is baseless because the posting is merely reporting on the existence of and basis for a publicly filed lawsuit. No part of any confidential communications had been disclosed to support a finding that privilege has been waived. *Mitchell v. Superior Court*, 37 Cal. 3d at 603 ("it is readily apparent that plaintiff here did not waive her attorney-client privilege through her mere acknowledgment of the fact that she had discussed [a topic] with her attorney [where

the] meager admission did not disclose any of the actual substance or content of those discussions").

### C. Appel Has Attorney-Client Privilege With Respect to Investigations of Millennium.

Wolf argues that Appel cannot assert the attorney-client privilege in response to Index Nos. 93-105 and 108-118, which asked about Millennium's conduct, because the corporation is the holder of the privilege, not the individual officers and directors. (Mot. at 11.)

Aside from the fact that the questions are irrelevant, as set forth above, Wolf misses the point. During the course of those transactions, Appel was represented by counsel in his individual capacity. Appel therefore has a separate right to assert the attorney-client privilege.

### D. Appel Has No Authority to Waive Millennium's Attorney-Client Privilege.

Even assuming *arguendo* that the privilege belongs only to Millennium, Wolf's argument is still unavailing. Wolf fails to account for the other side of that same coin—Appel has no authority to waive that privilege on behalf of Millennium.

That principle is expressly stated in *Venture Law Group v. Superior Court*, 118 Cal.App.4th 96 (2004), which Wolf cited to in his moving papers. (Mot. at 11.) In that case, the court explained that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* at 105 (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985)) (emphasis added). It therefore follows that "[f]ormer management of a [] company does not hold the [] company's attorney-client privilege and may not waive the attorney-client privilege." *Id.* at 104 (emphasis added). Thus, the court held that the individual litigants, who were former directors, officers, and majority shareholders, "cannot impliedly waive the attorney-client privilege that attached to their confidential communications with [counsel] on

behalf of [the corporation]." *Id.* at 105. Because the movants failed to meet their burden to show a waiver, the court vacated the order compelling the corporation's attorney to answer deposition questions that would violate the corporation's attorney-client privilege. *Id.* at 106.

The same principle applies here. The Court cannot compel Appel to waive the attorney-client privilege on behalf of Millennium. Appel is not authorized to do so. Nor has Wolf presented any evidence that the holder of Millennium's attorney-client privilege has waived the privilege. If Wolf's position were adopted, then the attorney-client privilege owed to a corporation can be easily circumvented by deposing the corporation's former directors and officers in their individual capacities. The court should reject Wolf's argument that Appel can be compelled to answer questions regarding Millennium which are protected by Millennium's attorney-client privilege.

## V. **WOLF IS NOT ENTITLED TO FEES.**

As set forth above, Wolf's motion is without merit, and he is therefore not entitled to sanctions or fees. But even if the Court were to grant his motion, Wolf would not be entitled to sanctions or fees.

Appel's attorney suspended the deposition pursuant to Rule 30(d)(3), which allows a deponent to "move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Appel's counsel repeatedly stated his objection that the deposition was being conducted to harass the witness. (ECF No. 77, Index Nos. 29 ("If there's any purpose other than harassing the witness and you have some questions, it will be good to get to them."); 98 ("These questions are being asked not for the legitimate purpose of being concerned that there was waiver because there can't be waiver because we stipulate. They're being asked only for the purpose of harassment."). Counsel finally suspended the deposition because it was "being taken solely for harassment." (*Id.*, Index Nos. 120, 121.) Consistent with Rule 30(d)(3),

Appel's counsel suspended the deposition in order to obtain an order. (*Id.*, Index No. 122.) Within an hour of suspending the deposition, counsel for Appel sought to meet and confer regarding the proposed motion. (ECF No. 80-1, Servais Decl., Ex. 3 at p. 74.) Because Wolf's counsel indicated his intent to bring this motion to compel, Appel's motion was not necessary as the issue would already be before the Court.

Although Appel has decided to forgo seeking sanctions on this issue, Wolf's actions themselves were so beyond the pale that he should not be entitled to any benefit. Although not admitted to practice in this district, Wolf's actions—personally—throughout the deposition, were a violation of the Code of Conduct adopted pursuant to Local Civil Rule 2.1. Wolf's verbal abuse was a clear violation of Local Civil Rule 2.1(a)(3)(a)-(c) ("lawyers to address legal arguments with other lawyers professionally, and not personally;" "lawyers to treat adverse witnesses, litigants and opposing counsel with courtesy, fairness and respect;" and "lawyers to conduct themselves in the discovery process as if a judicial officer were present."). Even if this Court did not consider it proper to regulate Wolf's actions because he is not admitted, his attorney's failure to control his client, after repeated requests, should not be condoned. No sanctions or fees should be awarded, and the deposition itself finally terminated.

## VI.   CONCLUSION

For the foregoing reasons, Wolf's motion to compel should be denied.

Dated:  March 16, 2022                BROWER LAW GROUP, APC


By: */s/ Steven Brower*
Steven Brower
Lee K. Fink
Pavel Kolmogorov

Attorneys for Plaintiff