1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11   HOWARD APPEL,                      Case No.:  18-cv-814-L-BGS
12                          Plaintiff,
                                        **ORDER DENYING DEFENDANT'S**
13   v.                                 **MOTION TO COMPEL PLAINTIFF**
                                        **TO RESPOND TO DEPOSITION**
14   ROBERT S. WOLF,                    **QUESTIONS**
15                          Defendant.
16                                      [ECF 80]
17

18   **I.     INTRODUCTION**

19          Defendant Robert S. Wolf has filed a Motion to Compel Plaintiff to Respond to

20   Deposition Questions and Plaintiff Howard Appel has filed an Opposition.  (ECF 80,

21   83.[1])  The parties' Joint Statement indexing the relevant portions of the transcript of

22   Plaintiff's deposition is also before the Court. (ECF 77.)

23

24   _____

25
     [1] At the request of the parties, the briefing schedule included the filing of an index of the
26   portions of the transcript the parties would both rely on in their briefing.  (ECF 77.)  The
     Court did not require the parties to directly quote every question from the transcript in
27   their briefs because they were providing the index, however, the Court did require "clear
     citations to the transcript and appropriate summaries of the testimony at issue."  (ECF 76
28

Defendant seeks an order from the Court compelling Plaintiff to appear for a further deposition and answer questions regarding Millennium Health Care (ECF 80 at 10-15)[2] and questions where he invoked the attorney-client privilege to either not answer, or not fully answer certain questions (ECF 80 at 16-20).  Additionally, Defendant seeks sanctions against Plaintiff for terminating the deposition.  (ECF 80 at 20-21.)  In opposing the Motion, Plaintiff relies on the Court's prior Order regarding the irrelevancy of discovery regarding Millennium and argues the same is true here (ECF 83 at 9-12), notes that Defendant failed to actually brief the relevancy of the questions to impeachment (*id.* at 12-13), and argues the attorney-client privilege was properly invoked (*id.* at 13-15) and was not waived (*id.* at 15-19).  Additionally, in opposing Defendant's request for sanctions, Plaintiff argues that even if Defendant were entitled to further responses to questions, Defendant is still not entitled to sanctions because Defendant's harassing conduct and verbal abuse by Defendant necessitated termination of the deposition.  (ECF 83 at 19-20.)

Having considered the parties' briefing and for the reasons set forth below, the Court **DENIES** Defendant's Motion.

## II.    BACKGROUND[3]

Plaintiff's Complaint asserts a single claim for libel per se for a statement Defendant made about Plaintiff in a November 27, 2017 email to three attorneys representing Plaintiff and two attorneys that represented Concierge Auctions, LLC

---

at 5 n.6.)  Accordingly, the Court has only considered the issues and questions raised and addressed in the parties' briefs.

[2] The Court cites the CM/ECF electronic pagination throughout unless otherwise noted.

[3] The Court only briefly notes the procedural history and allegations asserted in this case as necessary to provide context to the arguments raised by both parties that rely on the allegations of Plaintiff's Complaint and prior court decisions.  A more detailed background is provided in the Court's Order Quashing eight subpoenas issued by Defendant.  (*Appel v. Wolf*, Case No. 21-cv-1466-L-BGS, ECF 24 (Order Granting in Part Motions to Quash Subpoenas.)

("Concierge").  (Compl. [ECF 1] ¶¶ 9-13, 14-19 (First Claim for Relief, Libel Per Se); ECF 83 at 6.)  The email was related to a case between Plaintiff and Concierge. (Compl. ¶¶ 3-6, 10.)  In the email, Defendant stated:

> By the way, I know Howard Appel from when I used to head the litigation side at Gersten Savage, more than 10 years ago.  Howard had legal issues (securities fraud) along with Montrose Capital and Jonathon Winston who were also clients at the time.  Please send him my regards.

(*Id.* ¶10 (hereinafter "November 2017 Statement.")

Defendant has conceded this statement was mistaken and made about a different Howard Appel.  (Decl. of Robert Wolf [ECF 5-2] ("Wolf Decl.") ¶ 8 ("[P]laintiff turned out to be a different Howard Appel . . .").)  However, the Complaint alleges that Defendant refused to retract the statement despite two requests for a retraction or apology.  (Compl. ¶ 13.)

Earlier in this case, Defendant filed a special motion to strike under California's anti-SLAPP statute, California Civil Code § 425.16.  (ECF 5.)  It was denied by the district court and Defendant filed an interlocutory appeal to the Ninth Circuit.  (ECF 29 (denying), ECF 31 (appeal).)[4]  In affirming the district court, the Ninth Circuit explained that "the district court correctly held that Appel was reasonably likely to succeed on the merits of his claim, given that Wolf's email was facially defamatory and not immunized by California's litigation privilege."  *Appel v. Wolf*, 839 Fed. Appx. 78, 80 (9th Cir. Dec. 14, 2020).  Following the interlocutory appeal, this case proceeded.  (ECF 50.)

During discovery, Defendant issued eight subpoenas to non-parties that the Court quashed.  (*See* Exhibit A to Plaintiff's Opposition [ECF 83-1] or ECF 24 (Order granting

---

[4] Plaintiff also filed a cross appeal (ECF 36) that the Ninth Circuit did not reach. (ECF 36 (Plaintiff's cross appeal); *Appel v. Wolf*, 839 Fed. Appx. 78, 79 n.1 (9th Cir. Dec. 14, 2020).

in part motions to quash subpoenas) in Case No. 21-cv-1466-L-BGS[5] (hereinafter "Quash Order").)  Plaintiff moved to quash the subpoenas.  (*Id.*)  The Court quashed the subpoenas for numerous reasons, including that Defendant had not established the discovery sought regarding Millennium, where Plaintiff was previously President, was relevant to the statement that Plaintiff "had legal issues (securities fraud)."  (*Id.* at 16-21.) Rather, Defendant attempted to equate allegations regarding potential Medicare fraud at Millennium with Plaintiff having legal issues with securities fraud.  (*Id.* at 18, 22 (finding Defendant failed to show how Millennium conduct was relevant to "legal issues" as opposed to factual issues).)  The Court explained that the November 2017 Statement concerned only legal issues regarding securities fraud and that does encompass "discovery about Appel's alleged fraudulent conduct . . . to prove facts that he was so involved."  (*Id.*)  The Court also found Defendant failed to identify how the many broad requests at issue would be relevant to his truth defense (*id.* at 23,) and that the requests were not proportional to the needs of the case (*id.* at 23-25).

After numerous delays by the parties, Plaintiff was finally deposed on January 13, 2022.  The parties initially contacted the Court regarding Plaintiff's January 13, 2022 deposition shortly after it, on January 20, 2022.  (ECF 73.)  However, the parties did not have the transcript of Plaintiff's deposition and requested to delay briefing the dispute until they obtained it.  (ECF 73-74.)  Following the parties' notification of the Court that they received the transcript, the Court issued a briefing schedule.[6]  (ECF 76.)  This Motion followed.

Generally, Defendant's arguments can be categorized by questions regarding Millennium that Plaintiff refused to answer and questions where Plaintiff invoked the

---

[5] The Order was issued in three related cases raising the same arguments.  The cases originated in three different districts, but were eventually transferred to this district under Federal Rule of Civil Procedure 45(f).

[6] The briefing schedule was also extended at the parties' request.  (ECF 79.)

attorney-client privilege to either not answer or not fully answer questions.  (ECF 80 at 10-15 (Millennium); 15-16 (attorney-client privilege as to Millennium); 16-17 (attorney-client privilege waived as to website post); 17-20 (attorney-client privilege waived by filing this case).)  Defendant also seeks sanctions for Plaintiff's termination of the deposition.  (ECF 80 at 20-21.)  The Court first addresses the Millennium questions, then consider the attorney-client privilege issues, and finally addresses the issue of sanctions.[7]

## III.   MILLENIUM QUESTIONS

Defendant seeks a Court Order requiring Plaintiff to sit for an additional deposition and answer questions Defendant asserts relate "to the sale of securities omitting material information" including regarding Millennium's alleged submission of false claims to Medicare, a Department of Justice investigation into Millennium, and whether these activities were concealed from lenders participating in a 2014 credit agreement with Millennium.[8]  (ECF 80 at 12-15; ECF 77, Index Nos. 14-15, 88-90, 95-98, 100, 102-04, 109, 113-114, 116, 118.)  Defendant claims questions on these topics are within the scope of his defense that Plaintiff "had legal issues (securities fraud)." (*Id.* at 6.)  He claims his defense is that his statement in the email regarding Plaintiff was true based on Plaintiff's own conduct which constituted securities fraud.  (*Id.* at 6.)  As detailed below, relying on allegations in lawsuits filed regarding conduct at Millennium and the 2014 Credit Agreement, Defendant asserts that these questions are relevant "to both Appel's burden to show [Defendant's] claim is materially false" and Wolf's defense that the statement is true, *i.e.* his truth defense.  (*Id.* at 10-15.)

Plaintiff argues the questions are not relevant to Defendant's statement that Plaintiff "had legal issues (securities fraud)." (ECF 83 at 5, 9-12.)  As to the questions

---

[7] Defendant mentions Plaintiff's credibility in his introduction (ECF 80 at 7-8), but does not otherwise address it.  Despite this, the Court has also addressed this issue.

[8] As noted above the Court will only address the questions and topic areas put forth in the parties' briefs given the Court's requirement of clear citations and summaries of any testimony at issue. (ECF 76 at 5 n.6.)

regarding Medicare billing at Millennium, Plaintiff argues the Court already found the topic irrelevant to Plaintiff having "legal issues (securities fraud)." (*Id.* at 9-10 (quoting Quash Order at 16).) As to the questions regarding Millennium's financial transactions, Plaintiff relies on the Court's differentiation between legal and factual issues to assert that none of the lawsuits Defendant relies as a basis to ask questions about Milleniums' financial transactions indicate Plaintiff, as opposed to others, had any legal issues with securities fraud. (ECF 83 at 10-12.) And finally, Plaintiff again argues that none of this information has any connection at all to Defendant's actual statement that Plaintiff "had legal issues (securities fraud) <u>along with Montrose Capital and Jonathan Winston who were also clients at the time</u>." (ECF 83 at 12 (emphasis in Plaintiff's brief).) Plaintiff emphasizes that none of the information sought by Defendant has anything to do with Montrose Capital, Jonathon Winston, or Plaintiff being a client of Defendant. (*Id.*)

## A.    Relevancy

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"District courts have broad discretion in controlling discovery" and "in determining relevancy." *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) and *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Information within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

**B.**     **Defamation and Truth Defense**

The Court does not repeat the lengthy discussion of defamation and the truth defense included in the Court's November 9, 2021 Order.  (Quash Order at 9-10.) However, given the Court is addressing the relevancy of the questions to Plaintiff's libel per se claim and Defendant's truth defense, the Court briefly notes the following standards. "Defamation . . .  involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999); *see also Appel*, 839 Fed. Appx. at *80 ("A claim for defamation under California law involves "a publication" that is "false," defamatory," unprivileged," and that "has a natural tendency to injure or that causes special damage.") (quoting *Taus v. Loftus*, 40 Cal. 4th 683 (2007)).  "[A] defamatory meaning must be found, if at all, in reading the publication as a whole . . . [not] snippets taken out of context." *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998).  However, "[b]y the same token, not every word of an allegedly defamatory publication has to be false and defamatory to sustain a libel action." (*Id.* (citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 510 (1999)).

Here, Plaintiff asserts a single claim for libel per se.  (ECF 1 ¶¶ 14-19)  "A statement is libel per se, or libel on its face, when it 'is defamatory without the need for explanatory matter such as an inducement, innuendo, or other extrinsic fact.'" *Quidel Corp. v. Siemens Med. Solutions USA, Inc.*, __ F.Supp.3d __, 2020 WL 1820247, at *4 (S.D. Cal. 2020) (quoting *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700 (2007)); *see also Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 382 (1986) ("A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as inducement, innuendo, or other extrinsic fact, is said to be libel on its face.")

For a libel per se claim, a plaintiff is not required to prove he suffered special damages, *i.e.* "that he has suffered in respect to his property, business, trade, profession or occupation . . . a result of the alleged libel, and no other" to obtain an award of

damages.  *Barnes-Hind, Inc.*, 181 Cal. App. 3d at 382 (citations omitted).  If a plaintiff "proves a libel per se claim, it is unnecessary to prove special damages; rather, damage to reputation is presumed."  *Quidel Corp.*, 2020 WL 1820247, at *4 (citing *Barnes-Hind*, 181 Cal. App. 3d at 381).

"In all cases of alleged defamation, whether libel or slander, the truth of the offensive statement or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose."  *Smith*, 72 Cal. App. 4th at 646 (collecting cases).[9]  To establish a truth defense, a "defendant must prove the truth of all important aspects in the statement.  However, defendant is not required to prove the truth of every word of the statement or to prove its literal truth."  *Gantry Constr. Co. v. Am. Pipe and Const. Co.*, 49 Cal. App. 3d 186, 194 (1975); *see also Smith*, 72 Cal. App. 4th at 646-47.

## C.    Defendant's Questions

Defendant identifies the following questions:

- Mr. Appel, you were president of Millennium Health Care at the time that it entered into a credit agreement with several hedge funds and institutional investors in April 2014, correct? (ECF No. 77, Index Nos. 14-15.)

- Mr. Appel, this credit agreement was, as you can see, dated April 15, 2014, and it was executed when you were president of Millennium, correct? (Index Nos. 88-90)

---

[9] CACI No. 1720 Affirmative Defense—Truth:
  [Name of defendant] is not responsible for [name of plaintiff]'s harm, if any, if [name of defendant] proves that [his/her/nonbinary pronoun/its] statement(s) about [name of plaintiff] [was/were] true. [Name of defendant] does not have to prove that the statement(s) [was/were] true in every detail, so long as the statement(s) [was/were] substantially true.

- Millennium did not disclose the Department of Justice investigation into Millennium prior to the closing of this credit agreement, correct? (Index Nos. 95-96, Exh. 11.)

- Mr. Appel, you knew that a grand jury had been paneled by a federal prosecutor in 2012, well before this credit agreement had been executed, right? (Index No. 96. Exh. 11.)

- Mr. Appel, you were aware in 2012 that Millennium was served with a subpoena by the Department of Justice, right? (Index No. 97.)

- Millennium did not disclose that either a grand jury had been paneled by the federal prosecutor or that Millennium had been served with a subpoena by the Department of Justice in -- prior to April 15, 2014, when this credit agreement closed; is that correct? (Index No. 98.)

- Millennium's materials that were soliciting the lenders did not accurately represent Millennium's compliance with requirements of the law, right? (No. 100.)

- Millennium did not accurately represent that there was no investigation pending or threatened that would reasonably expect -- be expected to have a material adverse effect on Millennium, right? (Index No. 102.)

- Mr. Appel, Millennium did not disclose to any of the lenders that were party to this credit agreement any of its fraudulent billing practices, right? (Index No. 103.)

- Millennium did not disclose to any of the lenders participating in this credit agreement of Millennium's submission of false claims to the Medicare program, right? (Index No. 104.)

- In connection with the credit agreement that we're looking at as Exhibit 11, isn't it a fact that in soliciting and receiving this $1.8 billion loan, Millennium was participating in securities fraud? (Index No. 109, Exh. 13.)

- Mr. Appel, is that your signature? (Index No. 113.)

- Mr. Appel, in signing this document on behalf of Millennium Laboratories, Millennium Laboratories was misrepresenting their legal issues with the Department of Justice in order to induce the lenders to provide the $1.8 billion loan, right? (Index No. 114.)

- And these materials in the confidential information memorandum misrepresented that there was no investigation pending or threatened that would reasonably be expected to have an adverse material effect on Millennium, correct? (Index No. 116, Exh. 13.)

- Mr. Appel, the contents of Exhibit 13 nowhere disclosed that there was a grand jury impaneled to investigate Medicare fraud by Millennium, correct? (Index No. 118, Exh. 13.)

(ECF 80 at 14-15):

### D.    Analysis

The crux of Defendant's argument for the relevancy of these questions is that "Appel sold securities to investors while making material misstatements under the securities fraud statutes by claiming Millennium was compliant with the law and

standards promulgated by regulatory agencies." (*Id.* at 13-14.)  However, all the questions are about Millennium and Plaintiff's conduct at Millennium.  None of the questions regard Plaintiff having legal issues with securities fraud at Millennium.  At most these questions attempt to establish Plaintiff's alleged participation in a fraud committed by Millennium regarding billing and the 2014 Credit Agreement.

Defendant relies on numerous lawsuits to argue Defendant's November 2017 statement that Plaintiff had "legal issues (securities fraud)" was not materially false. (ECF 80 at 11-13.)  Plaintiff argues none of these lawsuits demonstrate he "had legal issues (securities fraud)" because two were not brought against him and the one cited that did include him as a defendant was not for securities fraud.  (ECF 83 at 11-12.)  And, like the lawsuits, Plaintiff argues there is no indication in the DOJ letter to an attorney at Millennium that Defendant quotes in his Motion that Plaintiff was being pursued for securities fraud.  (*Id.* at 11.)  Because these allegations provide the basis for Defendant's relevancy argument regarding Plaintiff having "legal issues (securities fraud)," the Court reviews each of them.

Defendant cites many of the allegations in the Complaint in *Kirschner v. JPMorgan Chase Bank*, as well as portions of rulings in *In re Millennium Lab Holdings II, LLC*, and *Opt–Out Lenders v. Millennium Lab Holdings II, LLC* (*In re Millennium Lab Holdings II, LLC* ).[10] (ECF 80 at 11-13.)  Defendant relies on them for the proposition that Plaintiff was one of the controlling persons who received proceeds from Millennium's misrepresentations about its financial condition.  (ECF 80 at 11).  Defendant also claims they show "… Appel's involvement in preparing the Millennium offering materials and communications he had with investors regarding the legality of

---

[10] *Kirschner v. JPMorgan Chase Bank*,Case No. 17-cv-6334, (Sup. Ct N.Y. Cnty. 2018) (Exhibit 2); *In re Millennium Lab Holdings II, LLC* No. 15-12284 (LSS), 2019 WL 1005657, at *1 (Bankr. D. Del. Feb. 28, 2019) (Exhibit 6); *Opt–Out Lenders v. Millennium Lab Holdings II, LLC* (*In re Millennium Lab Holdings II, LLC* ), 242 F. Supp. 3d 322, 340–41 (D. Del. 2017).

18-cv-814-L-BGS

Millennium's sales, marketing, and billing practices,…" (*Id.* at 12.)  Defendant quotes a portion of a DOJ letter to a Millennium attorney in a case indicating Millennium was being investigated for fraudulent billing practices.  (*Id.* at 13.)  In sum, Defendant alleges that "…Appel sold securities to investors while making material misstatements under the securities fraud statutes by claiming Millennium was compliant with the law and standards promulgated by regulatory agencies." (*Id.* at 13-14.)  Thus, Defendant argues that Plaintiff should be compelled to answer questions about this conduct.  (*Id.* at 14.)

Plaintiff was not named as a defendant in *Kirschner v. JPMorgan Chase Bank*, Case No. 17-cv-6334 or *In re Millennium Lab Holdings II*, No. 15-12284.  But, Defendant relies on the allegations of the Complaint to try to prove Plaintiff's conduct as President of Millennium was securities fraud.  (ECF 80 at 11-12.)  However, proving his conduct or misconduct does not equate to Plaintiff having legal issues regarding securities fraud.  As Plaintiff notes, these allegations might show the banks named as defendants had legal issues with securities fraud because they were named in lawsuits alleging securities fraud, but not Plaintiff. (ECF 83 at 10-11 ("[The]se lawsuits might be evidence that the banks 'had legal issues (securities fraud),' but not [Plaintiff].") The DOJ letter referenced in an action between Millennium and an insurer that Defendant relies on is even further removed. (ECF 80 at 13 (citing *Millennium Labs, Inc. v. Allied World Ins. Co.*, 135 F. Supp. 3d 1165, 1169 (S. D. Cal. 2015)[11]).)  It concerns policy coverage and the portion of the DOJ letter cited identifies an investigation for false or fraudulent billing.

*Opt–Out Lenders v. Millennium Lab Holdings II, LLC* was filed against Plaintiff and other named defendants, none of whom are Montrose Capital or Jonathon Winston.

---

[11] The Court has considered this reference for purposes of Defendant's Motion because Defendant relies on the decision only to quote part of a DOJ letter quoted in the decision. (ECF 80 at 13.)   However, the Court notes that a motion for reconsideration of this decision, based on newly discovered evidence, was later granted. *Millennium Labs., Inc. v. Allied World Assurance Co.*, 165 F. Supp. 3d 931 (S.D. Cal. 2016).

*In re Millennium Lab Holdings II, LLC*, 242 F.Supp.3d 322, 340–41 (D. Del. 2017). The Complaint alleged:

> (i) violation of RICO and conspiracy to violate RICO (18 U.S.C. §§ 1962(c) & (d)), based on allegations that Defendants engaged in fraudulent billing practices, including sending illegal reimbursement requests to Medicare and state Medicaid agencies; (ii) fraud and deceit based on intentional misrepresentation, aiding and abetting fraud, and conspiracy to commit fraud, based on allegations that Defendants made false and misleading representations, for the purpose of inducing Appellants to enter into the Credit Agreement, regarding the accuracy of Debtors' financial records, Debtors' compliance with applicable laws, and the existence of pending investigations and litigation against the Debtors; and (iii) restitution, based on allegations that, as a result of the fraudulent inducement, Defendants received a benefit of more than $100 million of loans issued under the Credit Agreement.

*Id.* at 330.

Plaintiff being named in this Complaint can be said to have legal issues regarding these allegations.  However, this Complaint does not allege securities fraud against Plaintiff.  As the Court has previously ruled,

> Wolf's discovery requests involve him seeking to prove that Appel was involved in different fraudulent conduct.  However, the email limits the discovery to legal issues regarding securities fraud.  Legal issues involve questions of the law whereas factual issues involve one party's evidence (facts) controverted by another's evidence.  Hence, discovery about Appel's alleged fraudulent conduct seeks evidence to prove facts that he was so involved.  [The Defendant] does not address how the requested discovery is relevant to legal issues that Appel supposedly had.

(ECF 24 at 22.)

This same analysis applies here.  The Court found that discovery to prove Plaintiff was involved in fraud does not go to prove he had legal issues concerning securities fraud.  (Quash Order at 22.)  Such discovery involves factual issues, not legal issues.  (*Id.*)  Although Defendant has focused his deposition questions and his briefing more on the financial transaction and what was or was not disclosed prior to it, including the DOJ

1    letter, Defendant's allegations are still about potential fraudulent conduct at Millennium,

2    not Plaintiff having "legal issues (securities fraud)." (November 2017 Statement.)  In

3    sum, the questions Defendant wants Plaintiff to answer are to show Plaintiff was involved

4    in the preparation of offering materials and communications he had or did not have with

5    investors regarding the legality of Millennium's sales, marketing, and billing practices.

6    He also seeks to establish he was one of the controlling persons who received proceeds

7    from Millennium's fraud.  These questions are meant to establish that Plaintiff was

8    involved in Millennium's fraudulent conduct.  The questions are not designed to establish

9    that Plaintiff had legal issues regarding securities fraud.  They do not seek information

10    relevant to the statement that Plaintiff "had legal issues (securities fraud)." (November

11    2017 Statement.)

12        Notwithstanding, none of Defendant's allegations against Plaintiff include

13    Montrose Capital or Jonathon Winston.  As the Court explained in its Order quashing

14    Defendant's subpoenas, the allegations regarding Millennium lack any "connection to

15    [Defendant's] statement that Appel has 'legal issues (securities fraud) *along with*

16    *Montrose Capital and Jonathon Winston*."  (Quash Order at 16 (emphasis added).)

17    Although the Court went on to consider the relevancy of discovery to Defendant's

18    narrowed version of the November 2017 Statement in greater depth as it has here, the

19    Court explained that Defendant "made a specific statement about [Plaintiff] and none of

20    the discovery sought [was] of consequence to the truth of that actual statement," which

21    includes it being "along with Montrose Capital and Jonathon Winston who were also

22    clients at the time."  (November 2017 Statement.)  However, Defendant has still not

23    addressed this issue.  In fact, Defendant's brief does not even acknowledge any portion of

24    the statement beyond "legal issues (securities fraud)" or provide any authority for

25    completely ignoring the rest of the November 2017 Statement.  This is a particularly

26    problematic issue to ignore given the Court's prior finding that the lack of any connection

27    to the more complete version of this statement was itself a "sufficient reason to find the

28    discovery sought irrelevant."  (*Id.*)

14

While Defendant has somewhat shifted and narrowed the focus of discovery from conduct related to Medicare fraud at Millennium to the financial transaction between Millennium and the banks, these allegations still lack any connection to Defendant's claim that Plaintiff was a client and had legal issues with securities fraud with Jonathon Winston and Montrose Capital.  As Plaintiff argues in opposition, "[n]one of the information that [Defendant] is seeking to discover shows that [Plaintiff] had legal issues related to securities fraud, much less that such issues were connected to Montrose Capital or Jonathon Winston, or that [Plaintiff] was a client of [Defendant's]."  (ECF 83 at 12.)  It is clear that the information Defendant seeks to delve into with these questions has no connection to Defendant's statement when more than Defendant's snippet is considered. While the Court recognizes the most negative part of the statement is that Plaintiff had "legal issues (securities fraud)," that does not mean Defendant is permitted to modify his own statement for purpose of discovery without explanation or authority, exclude most of the statement to make it less specific, and then try to encompass facts having nothing to do with the accurate version of the statement.

Defendant provides no connection between his questions and securities fraud along with Montrose and Winston. Therefore, even assuming Plaintiff had legal issues about securities fraud, such issues would also have to include Montrose Capital and Winston in order to prove the defense of truth.  They do not.

The Court need not address proportionality given the Court's finding on relevancy, however, the discovery sought is also not proportional to the needs of the case.  Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  In discussing the 2015 Amendments regarding proportionality, the Advisory Committee

reiterated a prior note, that "[t]he objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Adv. Comm. Notes to Rule 26 (2015 Amendments) (quoting Adv. Comm. Notes to 1983 Amendments)).

Here, the discovery sought, even if relevant at all under Defendant's broad reading of "legal issues (securities fraud)" would still be very tangential to the November 2017 Statement. Defendant's November 2017 Statement was about someone else. Additionally, opening up this peripheral area to discovery would lead to even more minimally relevant or irrelevant and burdensome discovery.

On the surface, these deposition questions do not carry the same burden and expense imposed by the eight subpoenas Defendant issued in that they are burdening a party rather than a non-party and they are narrower that the overbroad and sweeping requests in the subpoenas.  However, opening up this line of inquiry has the potential to create a morass of expensive and burdensome irrelevant or hypothetically minimally relevant and disproportionate discovery.  Not only might it lead to further disproportionate discovery on non-parties on a peripheral issue, but Plaintiff would be in the position of trying to disprove these *allegations* regarding factual conduct.[12]  As noted above, the entire basis for even asking the questions are *allegations* in complaints in lawsuits, only one of which was against Plaintiff, and that one did not allege securities fraud.  The parties would end up conducting something tantamount to a trial on Plaintiff's factual conduct at Millennium.  Not only are these not "legal issues," as discussed above and in the Court's Quash Order, but they are regarding completely different facts than alleged in the November 2017 Statement.

---

[12] The Court is not finding the reopening of discovery would be warranted, but only noting the potential for highly burdensome responsive discovery that would be equally irrelevant or, even assuming minimal relevance, not proportional to the needs of the case.

While the Court is well aware of its ability to limit tangential discovery, the whole purpose of the proportionality factors is " to guard against . . . disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry."  Adv. Comm. Notes to Rule 26 (2015 Amendments) (quoting Adv. Comm. Notes to 1983 Amendments)).  Even if these questions sought relevant discovery on "matters that are otherwise proper subjects of inquiry," it would be minimally and, for the reasons stated above, disproportionate to the needs of the case.  *Id.*

## IV.   ATTORNEY-CLIENT PRIVILEGE

Defendant's challenges to Plaintiff's assertion of attorney-client privilege can be categorized into three categories of questions: (1) Millennium related; (2) conciergescams.com posting; and (3) additional questions.  (ECF 80 at 8-10, 15-20.)

### A.   Legal Standard

"The attorney-client privilege, set forth at Evidence Code section 954, confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer.'"  *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 732, 734 (2009).  "Its fundamental purpose 'is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters." *Id.* (quoting *Mitchell v. Superior Court*, 37 Cal. 3d 591, 599 (1984)).  "The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Id.*

Under Evidence Code section 952, a "confidential communication between client and lawyer" is defined as

> information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to

whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

*Mitchell*, 37 Cal. 3d at 600.

"Evidence Code section 912 specifically provides that waiver of the attorney-client privilege, as well as other recognized privileges, occurs when any holder of the privilege 'has disclosed a significant part of the communication or has consented to such disclosure made by anyone'" *Id.* at 601.

### B.     MILLENIUM

Defendant argues that Plaintiff could not invoke the attorney-client privilege as to certain questions (Index Nos. 93-105, 108-118) that pertained to Millennium. (ECF 80 at 16.)  He asserts that because Plaintiff left Millennium in 2015 and then Millennium went through bankruptcy, the trustee in dissolution holds the privilege, not Appel.  (*Id.* (citing *Venture Law Group v. Superior Court*, 118 Cal. App. 4th 96, 105 (2004) and *United States v. Plache*, 913 F.2d 1375, 1381 (9th Cir. 1990)).)

Plaintiff first argues that Defendant misses the point because Plaintiff was represented by counsel in his individual capacity and that provided a separate right. (ECF 83 at 18.)  Plaintiff goes on to argue that even if the privilege belonged only to Millennium, Defendant is still wrong because Plaintiff "has no ability to waive privilege on behalf of Millennium."  (*Id.* at 18-19 (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985)).)  And, Plaintiff argues the questions are irrelevant, as previously discussed.  (*Id.* at 18.)

For solvent corporations, "[t]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."  *U.S. v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (quoting *Commodity Futures Trading Comm'n*, 471 U.S. at 348).  "The managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best

interests of the corporation and not of themselves as individuals." *Commodity Futures Trading Comm'n*, 471 U.S. at 348-49 (citing *Dodge v. Ford Motor Co.,* 204 Mich. 459, 507 (1919)).

As the cases relied on by Plaintiff and Defendant indicate, "[w]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Chen*, 99 F.3d at 1502 (quoting *Commodity Futures Trading Comm'n*, 471 U.S. at 343, 348); *see also Venture Law Group*, 118 Cal. App. 4th at 105 (quoting the same from *Commodity Futures Trading Comm'n,* 471 U.S. at 348-49). "New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors." *Commodity Futures Trading Comm'n*, 471 U.S. at 349; *see also Venture Law Group*, 118 Cal. App. 4th at 105 (quoting the same from *Commodity Futures Trading Comm'n,* 471 U.S. at 348-49). "Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Commodity Futures Trading Comm'n*, 471 U.S. at 349; *see also Venture Law Group*, 118 Cal. App. 4th at 105 (quoting the same from *Commodity Futures Trading Comm'n,* 471 U.S. at 349).

The dispute in *Commodity Futures Trading* centered on the control of the attorney-client privilege of a corporation in bankruptcy. The Supreme Court held "that the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications." *Commodity Futures Trading Comm'n*, 471 U.S. at 358. The court explained "that vesting in the trustee control of the corporation's attorney-client privilege most closely comports with the allocation of the waiver power to management outside of bankruptcy without in any way obstructing the careful design of the Bankruptcy Code." *Id.* at 354.

These cases explain what Plaintiff does not dispute, that as a pre-bankruptcy officer, Plaintiff lacks the authority to waive the attorney-client privilege on behalf of

Millennium. (ECF 83 at 18 (Arguing Defendant "fails to account for the other side of that same coin—Appel has no authority to waive that privilege on behalf of Millennium.").) This is also the case as to the portions of the cases relied on by Defendant.  In the portion of *Venture Law Group* Defendant relies on, the court, relying on *Commodity Futures Trading*, found individual directors and officers could not impliedly waive the attorney-client privilege by asserting an advice of counsel defense.  *Venture Law Group*, 118 Cal. App. 4th at 105.  Similarly, in *Plache*, the court denied suppression of evidence based on attorney-client privilege because the privilege belonged to the corporation that retained counsel for the corporate entity, not the individual defendant.  *Plache*, 913 F.2d at 1380-81 (citing *Commodity Futures Trading Comm'n*, 471 U.S. at 349).

However, none of these address whether a former corporate officer like Plaintiff could be compelled to answer questions implicating the corporation's attorney-client privilege when he lacks authority to waive the privilege on behalf of the corporation. This is not a situation where the Court is determining if a former officer could waive privilege on behalf of the corporation or if the former corporate officer can assert it "over the wishes of current managers."  *See Commodity Futures Trading Comm'n*, 471 U.S. at 349 ("Displaced managers may not assert the privilege *over the wishes of current managers*, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.") (emphasis added).  Here, there is no dispute Plaintiff cannot waive the privilege for Millennium, and the record before the Court reflects Plaintiff is not asserting privilege over the wishes of anyone.  He is simply not waiving the privilege and not answering questions implicating his former employer's privilege.

Defendant is effectively saying that because Plaintiff is no longer an officer, he cannot assert the privilege to protect Millennium's privileged communications. However, as Plaintiff explains, if Defendant's "position were adopted, then the attorney-client privilege owed to a corporation [could] easily be circumvented by deposing the corporation's former directors and officers in their individual capacities."  (ECF 83 at

19.)  Additionally, as a practical matter Plaintiff would effectively be disclosing Millennium's privileged communications despite Plaintiff lacking the ability to waive privilege.  The Court is not persuaded, based on Defendant's briefing and cases cited, that the attorney-client privilege should be so easily extinguished.  Plaintiff's assertion of the privilege was proper under the circumstances.

Notwithstanding, Plaintiff asserts, and Defendant has not disputed,[13] that as to the questions in Index Nos.93-105, 108-118, Plaintiff was represented by counsel in his individual capacity.  Therefore, he had a separate right to assert the attorney-client privilege. (ECF 83 at 18.)  As such the Court finds that the questions above infringed on Plaintiff's individual attorney-client relationship with his counsel and he had the right to assert that privilege.

Additionally, these questions are not relevant based on the analysis above.  They all regard conduct at Millennium and are irrelevant and not proportional to the needs of the case for all the reasons stated above. (*See supra* III.D.)

## C.   Website

Defendant seeks to compel testimony regarding who made the decision to publish the lawsuit detailed at Exhibit 9 (ECF 80-1 at 178) and why.  (ECF 80 at 16-17)  The questions that related to these topics are Index Nos. 77-80, 83, 87. (ECF 80 at 16-17.)  Defendant asserts Plaintiff waived attorney-client privilege as to any questions regarding the conciergescams.com posting by (1) disclosing a significant part of a confidential communication; and (2) because he should not be permitted to shield facts as opposed to communications.  (ECF 80 at 16-17 (citing *Edward Wildman Palmer LLP v. Superior Court*, 231 Cal. App. 4th 1214, 1226 (2014).)

---

[13] Although the Court's briefing schedule did not provide for a reply brief, Defendant could have sought leave to file one.  (ECF 76 ("Absent *leave of Court*, no reply brief may be filed.") (emphasis added).

18-cv-814-L-BGS

Plaintiff argues that the questions are irrelevant because they are inquiring about a posting that simply disclosed the defamatory statement already disclosed in this case with the indication that a lawsuit was filed against Defendant for making the statement.  (ECF 83 at 17.)  As to waiver of attorney-client privilege based on the posting, Plaintiff argues that there was no waiver because the posting does not disclose any confidential communication.  (*Id.* at 17-18.)

### 1.   Waiver

"Evidence Code section 912 specifically provides that waiver of the attorney-client privilege, as well as other recognized privileges, occurs when any holder of the privilege 'has disclosed a significant part of the communication or has consented to such disclosure made by anyone.'" *Mitchell*, 37 Cal. 3d at 601.

In *Mitchell*, the court held that plaintiff "did not waive her attorney-client privilege through her mere acknowledgment of the fact that she had discussed [the topic at issue] with her attorney."  *Id.* at 603.  The court explained that "[t]his meager admission did not disclose any of the actual substance or content of those discussions, . . . and the client's answers did not reveal the very specifics which the interrogatories were designed to produce." *Id.*  The court was "not persuaded that plaintiff's responses disclosed 'a significant part of the communication' with her attorneys, for such a conclusion would require considerably more depth and specificity than were present in [the plaintiff's] answers" and found no waiver of the attorney-client privilege.  *Id.* (quoting Evid. Code § 912).

Similarly, in the present case, posting the lawsuit on the website did not disclose any part, much less a significant part, of the attorney-client communications. Defendant's questions as to who decided to post the lawsuit and why do impinge on attorney-client communications, as objected to by the Plaintiff at the deposition. Therefore, the Court finds that the posting of the lawsuit did not waive his attorney-client privilege as to these communications.

### 2.     Specific Facts

Where the privilege applies, it may not be used to "shield facts, as opposed to communications, from discovery." *Zurich Am. Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485, 1504 (2007); *Upjohn Co v. United States*, 449 U.S. 383, 395-96 (1981) ("The protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing") (emphasis in original) (citation omitted).   "[R]elevant facts may not be withheld merely because [they were] incorporated into a communication involving an attorney," and knowledge that is not otherwise privileged does not become so by being communicated to an attorney. *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 735 (2009); *Zurich Am. Ins. Co.*, 155 Cal. App. 4th at 1504.

"Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney.'" *Costco*, 47 Cal. 4th at 735 (quoting *Greyhound Corp. v. Superior Court* 56 Cal.2d 355, 397 (1961)).   "Obviously, a client may be examined on deposition or at trial as to the facts of the case, whether or not he has communicated them to his attorney." *Id.*   "While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney." *Id.* "Thus, 'a litigant may not silence a witness by having him reveal his knowledge to the litigant's attorney'" (quoting *D.I. Chadbourne, Inc. v. Superior Court*, 60 Cal.2d 723, 734 (1964)).

On the other hand, the privilege bars discovery of a privileged communication irrespective of whether it includes unprivileged material; "when the communication is a confidential one between attorney and client, the entire communication, including its recitation or summary of factual material, is privileged." *Costco*, 47 Cal. 4th at 736. "Sections 956 through 962 enumerate eight exceptions to the attorney-client privilege." *Palmer*, 230 Cal. App. 4th at 1227.   "Where none of these exceptions apply, '[t]he privilege is absolute and disclosure may not be ordered, without regard to relevance,

18-cv-814-L-BGS

necessity or any particular circumstances peculiar to the case.'" *Id.* (quoting *Costco*, 47 Cal. 4th at 736 and citing *Kerner v. Superior Court*, 206 Cal. App. 4th 84, 111 (2012)).

The issue Defendant raises here is whether Plaintiff's confidential communications with his attorney also contain facts that are not privileged. The questions that the Defendant identifies as asking for facts rather than confidential communications that he wants the Court to compel Plaintiff to answer are Index Nos. 77-80, 83 and 87. Numbers 77-80 all ask Plaintiff whether it was his decision to place Exhibit 9 (ECF 80-1) on the internet. Number 83 regards whether Plaintiff authorized the posting. Number 87 regards when Plaintiff found out that it was posted on the internet.

Although it appears Defendant is asking about facts, the questions do not appear to seek relevant discovery and even if minimally relevant, they are not proportional to the needs of the case under Rule 26(b)(1). As noted above, "*relevant* facts may not be withheld merely because [they were] incorporated into a communication involving an attorney," and knowledge that is not otherwise privileged does not become so by being communicated to an attorney. *Costco*, 47 Cal. 4th at 735; *Zurich Am. Ins. Co.*, 155 Cal. App. 4th at 1504 (emphasis added). And, as detailed above, under Rule 26(b)(1), Defendant is entitled to nonprivileged matters that are relevant to his claim or defense and proportional to the needs of the case. One of the factors the Court considers as to proportionality is how important the discovery is to resolving the issues in the case. Rule 26(b)(1) ("[P]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering . . . the importance of the discovery in resolving the issues"). Defendant has failed to show how answers to these questions are relevant to important issues in the case, and how answers to these questions resolve those issues. Therefore, the Court finds compelling answers to these questions would not be proportional to the needs of the case because they are not relevant to resolving important issues in the case.

### D.   Additional Questions

Defendant argues Plaintiff has put communications with his attorneys at issue and this requires either a finding of waiver or imposition of evidentiary sanctions.  (ECF 80 at 17-20.)  Defendant initially claims that Plaintiff refused to answer any questions about damages he seeks as to each addressee on the email.  (*Id.* at 18 (citing Index Nos. 48-49, 50 and 65).)  At the deposition, Plaintiff objected primarily based on attorney-client privilege.  Plaintiff specifically indicates that he is not seeking "special damages according to proof," but rather seeking only presumed damages based on his single claim for libel per se based on Defendant's facially defamatory November 2017 Statement. (ECF 83 at 16.)  He asserts that his damages are presumed as to each of the five addressees. (*Id.*)

For a defamation per se claim, a plaintiff may recover actual damages of harm to his reputation and/or shame, mortification, or hurt feelings. CACI 1704 (addressing Actual Damages).  However, even if Plaintiff has not proved the above damages, he is entitled to assumed damages.  CACI 1704 ("Even if [Plaintiff] has not proved any actual damages for harm to reputation or sham, mortification, or hurt feelings, the law assumes that [Plaintiff] has suffered this harm.  Without presenting evidence of damage, [Plaintiff] is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable.");  *Barnes-Hind, Inc.*, 181 Cal. App. 3d at 382 (If a plaintiff proves a statement is libel per se, a plaintiff is not required to prove he suffered special damages, *i.e.* "that he has suffered in respect to his property, business, trade, profession or occupation . . . a result of the alleged libel, and no other" to obtain an award of damages.); *see also Quidel Corp.*, 2020 WL 1820247, at *4 (citing *Barnes-Hind*, 181 Cal. App. 3d at 381) (If a plaintiff "proves a libel per se claim, it is unnecessary to prove special damages; rather, damage to reputation is presumed.").  Without presenting any evidence, the law assumes he has suffered this harm and he is entitled to receive compensation for his assumed harm in whatever sum the jury believes is reasonable. *Id.*

Notwithstanding that Plaintiff is only seeking presumed damages, Plaintiff answered the content of these questions regarding damages.  Questions 47 and 48 were answered, and question 49 was answered by questions 47-48.  Question 50 was also answered.

Defendant next cites to numerous index numbers (ECF 80 at 19) in which Plaintiff either objected based on attorney-client privilege or objected to any communication with an attorney and otherwise allowed Plaintiff to answer.  (*Id.*)  Defendant argues that Plaintiff abused the attorney-client privilege because he is withholding relevant evidence. Defendant cites *Steiny & Company v. California Electric Supply* for the proposition that:

> When a party asserting a claim invokes privilege to withhold crucial evidence, the policy favoring full disclosure of relevant evidence conflicts with the policy underlying the privilege.  Courts have resolved this conflict by holding that the proponent of the claim must give up the privilege in order to pursue the claim.

(ECF 80 at 20 (quoting *Steiny & Co. v. California Elec. Supply Co.*, 79 Cal. App. 4th 285, 292 (2000).)  The decision goes on to indicate that "[w]here privileged information goes to the heart of the claim, fundamental fairness requires that it be disclosed for the litigation to proceed."  *Steiny & Company*, 79 Cal. App. 4th at 292.

However, in *Berns v. Sentry Select Insurance Company*, the Ninth Circuit clarified this exception, explaining that "[a]lthough [plaintiff] cites cases that he claims show there can be exceptions to the attorney-client privilege when "fairness requires" or a party uses it as a "sword and a shield," the cases that he cites do not apply here because they involve advice-of-counsel defenses, attorney disparagement, and the trade-secrets privilege." 766 F. App'x 515, 518 (9th Cir. 2019).  The court goes on to explain, [f]or instance, in *United States v. Amlani*, we held that the defendant waived attorney-client privilege when the defendant made a claim of attorney disparagement." *Id.* (citing 169 F.3d 1189, 1191 (9th Cir. 1999)).  "In *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, the defendant waived the advice-of-counsel defense by invoking the attorney-client privilege." *Id.* (citing 259 F.3d 1186, 1196 (9th Cir. 2001)). And, "[i]n

*Chevron Corp. v. Pennzoil Co.*, the defendant waived attorney-client privilege by invoking the advice-of-counsel defense. 974 F.2d 1156, 1162 (9th Cir. 1992)). The court then explains that *Steiny & Company* "did not involve the attorney-client privilege," rather, it "involved the trade-secrets privilege." *Id.* (citing 79 Cal.App.4th 285). The court then explained that the defendant had "not raised any advice-of-counsel defense nor a claim of attorney disparagement" and found "[n]o exception to the attorney-client privilege applies." *Id.*

Similarly, this case does not fit into one of the exceptions cited by *Berns*. And unlike *Steiny & Company*, this case does involve the attorney-client privilege. Further, as detailed above, the privilege bars discovery of a privileged communication irrespective of whether it includes unprivileged material; "when the communication is a confidential one between attorney and client, the entire communication, including its recitation or summary of factual material, is privileged." *Costco*, 47 Cal. 4th at 736. "Sections 956 through 962 enumerate eight exceptions to the attorney-client privilege." *Palmer*, 230 Cal. App. 4th at 1227. "Where none of these exceptions apply, '[t]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.'" *Id.* (quoting *Costco*, 47 Cal. 4th at 736 and citing *Kerner*, 206 Cal. App. 4th at 111).

In this case none of the above cited exceptions to the attorney-client privilege apply. Further, Defendant does not argue that the Plaintiff's objections based on the attorney-client privilege were not confidential communications. His position appears to be that by making the objections, the Plaintiff is withholding crucial evidence as stated in *Steiny & Company*. (ECF 80 at 20.)

Although the privilege is absolute and disclosure may not be ordered, the Court applies the crucial evidence test from *Steiny & Company* to the questions cited by Defendant that regard the attorney-client privilege. Of note, Defendant does not address the relevance of the answers to the questions he cites and why the answers are crucial to the claim of libel per se. Nor does Defendant claim the Plaintiff waived the attorney-

client privilege. *See Steiny & Co.*, 79 Cal. App. 4th at 292 ("Hughes and Morley had the right to stand on the privilege, but not the right to proceed with their claim while at the same time insisting on withholding key evidence from their adversary.")

Defendant divided the questions into three groups. (ECF 80 at 19.) Defendant's first summary of the questions cited states,

> Appel testified he is retired precluding harm to his 'occupation' and could not testify to a single witness who knew the statement was false when they read it, that understood Wolf's email accused him 'of being under indictment or other felonious conduct' or any recipient knew at the time the other 'Howard Appel' was a 'criminal' or his basis for claiming Wolf accused him of criminal activity.

(ECF 80 at 19.)

Defendant does not explain the relevancy of these topics to Defamation Per Se. *See* CACI No. 1704; analysis above and III.B.[14]

───────────────

[14]CACI No. 1704:

[Name of plaintiff] claims that [name of defendant] harmed [him/her/nonbinary pronoun] by making [one or more of] the following statement(s): [list all claimed per se defamatory statement(s)]. To establish this claim, [name of plaintiff] must prove all of the following:

Liability
1. That [name of defendant] made [one or more of] the statement(s) to [a person/persons] other than [name of plaintiff];
2. That [this person/these people] reasonably understood that the statement(s) [was/were] about [name of plaintiff];
3. [That [this person/these people] reasonably understood the statement(s) to mean that [insert ground(s) for defamation per se, e.g., "[name of plaintiff] had committed a crime"]];
4. That [name of defendant] failed to use reasonable care to determine the truth or falsity of the statement(s).
. . .

Assumed Damages

28

1     The Court further reviewed each question in this first group.  Index Questions

2 Numbers 33-35 were answered.  Questions Numbers 69 and 71 regarded the allegation in

3 the complaint as to why Plaintiff believed that Wolf was accusing him of felonious

4 conduct.  The Court finds answers to these questions involved the attorney-client

5 privilege.  Numbers 72-73 were answered.  Numbers 44-45 were answered.  Number 53

6 regarded who on the email chain was unaware Wolf's statement was untrue.  Other than

7 Plaintiff's attorneys, counsel allowed Plaintiff to answer.  Defendant, instead of following

8 up with a revised question, requested a break.  Numbers 60-62 regarded whether Plaintiff

9 was claiming that Preis, Boss, and Reynolds were aware or not that Defendant's email

10 was false. Number 63 presented no question.  Number 64 was answered except as it

11 regarded his counsel. Numbers 85-86 were answered.

12     The Court finds the answers to these unanswered questions were covered by

13 attorney-client privilege.  Further, the Court finds answers to these questions are not

14 crucial evidence as to the claim of libel per se.  Defendant has not even addressed how

15 answers to these questions are relevant to important issues in the case.  Again, the Court

16 notes that "relevant facts may not be withheld merely because [they were] incorporated

17 into a communication involving an attorney," and knowledge that is not otherwise

18 privileged does not become so by being communicated to an attorney. *Costco*, 47 Cal. 4th

19 at 735; *Zurich Am. Ins. Co.*, 155 Cal. App. 4th at 1504.  However, Plaintiff fails to proffer

20 how the answers to the unanswered questions are facts relevant to resolving important

21 issues in the case. Therefore, the Court also finds that they are not proportional to the

22 needs of the case.

23

24 _____

25     Even if [name of plaintiff] has not proved any actual damages for harm to
   reputation or shame, mortification, or hurt feelings, the law assumes that
26   [he/she/nonbinary pronoun] has suffered this harm. Without presenting
   evidence of damage, [name of plaintiff] is entitled to receive compensation for
27   this assumed harm in whatever sum you believe is reasonable. You must
   award at least a nominal sum, such as one dollar.
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant summarizes the second group of questions, stating that Plaintiff:

> Could not testify that anyone mistook him for the 'other Howard Appel' nor that Wolf's email harmed his reputation, veracity or honesty or caused him to be shunned or ridiculed. (citing ECF 77, Index Nos. 16-28, 30, 38-42; 85-86 ("And just to confirm, are you aware of anyone who has shunned you or ridiculed you because of Exhibit 1?"). (ECF 80 at 19)

(ECF 80 at 19.)

Defendant asks the Court to apply the test from *Steiny & Company*, but does not apply it himself. He does not establish how the answers to these inquiries are crucial evidence to the claim of libel per se when limited to assumed damages. However the Court has reviewed all the questions cited and applied the test. As detailed below, the Court finds this is not "crucial evidence" going "to the heart of that claim" that "fundamental fairness requires . . . be disclosed for the litigation to proceed" given Plaintiff is only asserting a libel per se claim and not seeking actual damages.[15]

The Court reviewed the questions cited by Defendant and Plaintiff's responses. Question Numbers 16-28 involve asking Plaintiff if he had discussions with his attorneys about the email and whether it exposed him to ridicule, contempt or angered him and the like. Number 30 inquires as to whom Plaintiff discussed that he was angered by the email. Number 38 asks if the statement caused any harm to his reputation. Numbers 39-40 concern whether the email caused his attorneys to doubt his honesty and veracity. Number 42 regarded whether anyone expressed doubt in his veracity or honesty as a result of the email statement. Numbers 85-86 ask if Plaintiff is aware of anyone that has shunned or ridiculed him because of the statement.

---

[15] As previously noted, Plaintiff has repeatedly indicated he is not seeking actual damages and is limiting himself to presumed damages for his single claim of libel per se. (ECF 83 at 14 ("Appel is entitled to recover presumed damages, so no evidence of damages needs to be presented"); 16 ("Wolf's argument might have been apposite had Appel sought to recover special damages according to proof, but Appel is not doing that here.").

18-cv-814-L-BGS

The questions that directly reference discussions he had with his attorneys (16-28, 39-41) are clearly attorney-client communications and the answers are not discoverable because they do not seek crucial evidence sufficient to breach the privilege.  Numbers 30, 38, 42, and 85-86 were answered.  The Court finds that to the extent an answer was withheld it was not sufficiently crucial to a claim or defense that "fundamental fairness requires it be disclosed for the litigation to proceed."  *Steiny & Co.*, 79 Cal. App. 4th at 292.

As to the third group of questions, Defendant summarizes them as follows, "Appel did testify it was 'quite possible' he knew of the 'other' Howard Appel before learning of Wolf's November 2017 email, but refused to testify to anything related to why, within hours of Wolf's email, Appel's counsel sent a link regarding the 'other Howard Appel's conduct." (ECF 19 (citing ECF 77, Trans. at 63:3-17, Index Nos. 74-75, depo Exs. 3, 7).) The Court, without some explanation by Defendant, cannot find how such information is crucial evidence.

The Court has additionally reviewed the cited questions.  As to Number 63 there was no question asked.  Numbers 74-75 inquired whether Plaintiff told someone other than his attorney to send a link to an article to Defendant to which Plaintiff responded in the negative.

In sum, the Court finds that answers to these three groups of questions do not go to the heart of the claim, and fundamental fairness does not require that answers be disclosed for the litigation to proceed. *Steiny & Company*, 79 Cal. App. 4th at 292.

## V.   CREDIBILITY

In the introduction to his brief, Defendant asserts that Plaintiff's credibility is as issue and cites to questions in the Index he claims concerns specific instances of past conduct for which he should be allowed to cross examine for impeachment under Federal Rule of Evidence 608(b). (ECF 80 at 7-8.) Plaintiff accurately notes in his Opposition that Defendant never goes on to argue this basis in his brief.  (ECF 83 at 12 ("Wolf raised the issue of impeachment in the introduction of his motion . . . but wisely dropped the

issue, never bothering to argue that point in his motion.")  However, presumably out of an abundance of caution, Plaintiff goes on to argue that none of the questions asked could be for purposes of impeachment because the questions at issue related to acts of Millennium.  (*Id.*)  Putting aside the issues under Rule 403, Plaintiff additionally argues his credibility is not at issue, as asserted by Defendant, based on punitive damages because that inquiry is as to Defendant's maliciousness, not Plaintiff's credibility.  (ECF 83 at 13 (citing Cal. Civ. Code § 3294(a) and CACI No. 1704).)

Rule 608, relied on by Defendant, states in pertinent part that:

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
(1) the witness; or
(2) another witness whose character the witness being cross-examined has testified about.

Although referring to cross examination of Plaintiff for specific instances of conduct to attack Plaintiff's character for truthfulness, none of the cited questions (Nos. 44-45, 68, 71) regard any alleged acts by Plaintiff for impeachment.  Nor does Defendant summarize the specific instances of conduct about which he seeks to cross exam Plaintiff. Therefore, Defendant has not established Plaintiff should be compelled to answers these questions under Rule 608(b).

Notwithstanding, after Plaintiff terminated the deposition, Defendant asked questions that were unanswered and all of which regarded Millennium's Medicare fraud. (ECF 77 at 34-38.) Defendant himself, not his attorney, argued that if Plaintiff engaged in bad acts, those would be relevant for impeachment under Rule 608(b)(1). (ECF 77 at 34.) He further stated that he can ask him about Millennium's criminal conduct and false claims and Medicare fraud to impeach his credibility. (*Id*. at 35)

All of these questions regard Millennium's conduct. Plaintiff is not Millennium, and therefore answers to these questions are not relevant to impeach *Plaintiff's* character under Rule 608. In sum, the Court finds that answers to the cited index questions are not relevant to impeach Plaintiff's character for truthfulness.

## VI.   SANCTIONS

Defendant seeks sanctions because Plaintiff unilaterally terminated the deposition without obtaining a court order.  (ECF 80 at 20-21 (citing Rule 30(d)).)  He seeks leave to file a fee application.  (*Id.* at 21.)  In support, Defendant indicates Plaintiff walked out of the deposition and Plaintiff was not offered for further deposition.  (*Id.*)

Plaintiff explains that he suspended the deposition under Rule 30(d)(3) (ECF 83 at 19-20) and identifies numerous issues with Defendant's conduct at the deposition that led to the termination of the deposition.  (ECF 83 at 5-6, 8-9, 19-20.)  Plaintiff's brief explains that given the Court's prior ruling as to the irrelevancy of discovery about Millennium, Plaintiff's counsel stated multiple times that questions about Millennium would not be answered.  (*Id.* at 8 (citing ECF 77 at Nos. 12, 59, 63).)  Plaintiff's counsel also proposed to stipulate that if Defendant would forego asking each and every Millennium question, Plaintiff would not later object that Defendant failed to ask specific questions.  (*Id.*)  Plaintiff also points to Defendant himself, not his counsel, repeatedly taunting Plaintiff's counsel to "grow up," calling Plaintiff's counsel a coward, and Defendant himself repeatedly making arguments on the record and requesting numerous lengthy breaks to confer with his attorney who was conducting the deposition.  (*Id.* at 5-6 and 8-9 (citing ECF 77 at Nos. 29 ("grow up"), 129 ("You're a coward Brower.  You're a coward")); *Id.* at 8 (citing ECF 77 Nos. 15, 43, 46, 52, 54, and 106) (breaks).)  Plaintiff also explains that he repeatedly stated his objection that the deposition was being conducted to harass the Plaintiff.  (*Id.* at 19 (citing ECF 77, Index No. 29, 98).)  Plaintiff argues that he properly terminated the deposition under Rule 30(d)(3) because it reached the point it was being take solely for purposes of harassment.  (*Id.* at 19-20.)  Further,

consistent with Rule 30(d)(3), Plaintiff suspended the deposition to obtain a court order. He also argues that the Defendant's behavior violated Civil L.R. 2.1, verbal abuse.

Rule 30(d)(2) provides for sanctions against one who "impedes, delays or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Rule 30(d)(2) sanctions do not require a finding of bad faith. *BNSF Ry. Co. v. San Joaquin Valley Rr. Co.*, No. 1:08-cv-01086-AWI-SMS, 2009 WL 3872043, at *3 (E.D. Cal. Nov. 17, 2009). The Rule "explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction" and the "sanction may be imposed on a non-party witness as well as a party or attorney." Rule 30 advisory committee notes (1993 Amendments). "The sanctions under Rule 30(d)(2) 'may include attorney's fees incurred as a result of the improper conduct and the necessity of filing a motion with the Court.'" *Lee v. Pep Boys-Manny Moe & Jack of California*, No. 12-CV-05064-JSC, 2015 WL 9268118, at *3 (N.D. Cal. Dec. 21, 2015) (quoting *BNSF Ry. Co.*, 2009 WL 3872043, at *3). Rule 30(d)(2) sanctions are discretionary. *Id.* (citing *Batts v. Cnty. of Santa Clara*, No. C 08-00286 JW, 2010 WL 545847, at *2 (N.D. Cal. Feb. 11, 2010).

Pursuant to Rule 30(d)(3)(A), a party may move to terminate a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."

The deposition took place on January 13, 2022. The parties jointly contacted the Court on January 20, 2022 to raise this discovery dispute. The Court thereafter ordered briefing. This Court reviewed the parties' briefs and issued this Order. As such the Court deems that Rule 30(d)(3)'s requirement of a motion is satisfied.

Plaintiff unilaterally terminated the deposition, thereby impeding the deposition per Rule 30(d)(2). At the deposition, Defendant repeatedly questioned Plaintiff regarding the fraudulent conduct at Millennium. The Court in its order on the motion to quash found that discovery to prove Medicare fraud was not relevant to Plaintiff having "legal issues (securities fraud)." (Quash Order at 22.) The repeated questioning about

Millennium could be viewed as harassment and the conduct by Defendant himself is deemed to be annoying.  The Court finds sanctions are not appropriate under these circumstances.

## VII.   CONCLUSION

Defendant's Motion to Compel and for Sanctions is **DENIED**.  The Court previously granted the parties' Joint Motion to continue the deadline to file pretrial motions to two weeks after the Court's ruling on this Motion.  (ECF 88.)  The Court sets that deadline for **July 12, 2022**.

**IT IS SO ORDERED.**

Dated:  June 27, 2022

Hon. Bernard G. Skomal
United States Magistrate Judge

35

18-cv-814-L-BGS