UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD APPEL,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>ROBERT S. WOLF,<br><br>　　　　　　　　　Defendant. | Case No.: 18-CV-814 TWR (BGS)<br><br>**ORDER (1) BIFURCATING TRIAL AND (2) REVISING TENTATIVE RULINGS ON MOTIONS *IN LIMINE***<br><br>(ECF Nos. 117, 135, 137, 138) |

Presently before the Court are filings from Plaintiff Howard Appel, (ECF No. 137), and Defendant Robert S. Wolf, (ECF No. 138), in response to the Court's request for supplemental briefing on bifurcation and assumed damages and its tentative rulings on Plaintiff's Motions *in Limine*. After carefully considering the Parties' arguments, the record, and the relevant law, the Court **BIFURCATES** the trial on September 18, 2023. Furthermore, the Court **REVISES** its tentative rulings, as follows: (1) the first Motion *in Limine* was tentatively denied and that ruling is affirmed; (2) the second Motion *in Limine* was tentatively granted and that ruling is affirmed; (3) the third Motion *in Limine* was tentatively granted and is now granted in part and denied in part; and (4) the fourth Motion *in Limine* was tentatively denied and that ruling is affirmed. (*See* ECF No. 135; *see also* ECF No. 136, "PTC Tr.")

/ / /

## BACKGROUND

Plaintiff Howard Appel initiated the instant action against Defendant Robert S. Wolf on April 27, 2018. (*See generally* ECF No. 1.) The Complaint brings a single California state law claim for libel per se and seeks $500,000 in assumed damages and $1.5 million in punitive damages. (*See generally id.*) In short, the Complaint alleges Defendant, an attorney who represented Plaintiff's opposing counsel in a separate action, sent an email to Plaintiff's then-counsel, copying one other plaintiff attorney and two other defense attorneys, in which he made the following statement: "By the way, I know Howard Appel from when I used to head the litigation side at Gersten Savage, more than 10 years ago. Howard had legal issues (securities fraud) along with Montrose Capital and Jonathan Winston who were also clients at the time. Please send him my regards." (*See id.* at 2–3.) Defendant twice refused to publish a retraction. (*See id.* at 4.) The instant litigation now follows.

After Plaintiff filed his Complaint, Defendant filed an Answer, which raised ten affirmative defenses, (ECF No. 4), along with an Anti-SLAPP Motion to Strike, (ECF No. 5). The Honorable M. James Lorenz denied the Motion to Strike, (*see* ECF No. 29), Defendant appealed, (*see* ECF No. 31), Plaintiff conditionally cross-appealed, (*see* ECF No. 36), and the Ninth Circuit affirmed the district court's Order, (*see* ECF No. 39). In so doing, the Circuit Court concluded, "the district court correctly held that Appel was reasonably likely to succeed on the merits of his claim, given that Wolf's email was *facially defamatory* and not immunized by California's litigation privilege." (*See* ECF No. 39 at 6 (emphasis added); *see also id.* at 6 ("Appel's allegations are sufficient to establish a reasonable likelihood of success on the merits of a claim for libel per se.").)

After protracted discovery, Plaintiff filed a Motion for Partial Summary Judgment, or in Alternative, for an Order Treating Specified Facts as Established, (ECF No. 91), which was accompanied by a Request for Judicial Notice, (ECF No. 91-2). Defendant in turn filed a Motion for Summary Adjudication. (ECF No. 92.) After full briefing, (*see* ECF Nos. 96, 98, 100, 101), Judge Lorenz issued an Order (1) Granting Plaintiff's Motion

for Partial Summary Judgment; (2) Granting Plaintiff's Request for Judicial Notice; and (3) Denying Defendant's Motion for Summary Adjudication, (ECF No. 104).

Plaintiff's Motion for Summary Judgment sought to preclude all affirmative defenses raised in Defendant's answer—(1) Privilege, (2) Failure to Mitigate, (3) Lack of Personal Jurisdiction, (4) Failure to State a Claim, (5) Waiver, (6) Unclean Hands, (7) Consent, (8) Laches, (9) Estoppel, (10) Excessive Fines—as well as the unasserted affirmative defense of truth. (*See generally* ECF No. 91.) The Court granted Plaintiff's Motion in full. (*See* ECF No. 104 at 9–20.) Defendant's Motion for Summary Judgment sought to preclude Plaintiff from seeking punitive damages. (ECF No. 92.) As the Court explained, punitive damages are available when a defendant has engaged in (1) fraud, (2) oppression, or (3) malice. (*See* ECF No. 104 at 20.) Although the Court found that Defendant indisputably acted without fraud or oppression, it denied Defendant's Motion because a genuine dispute remained as to whether Defendant acted with malice. (*See id.* at 22–23.)

After ruling on the Cross-Motions, Judge Lorenz reset the Final Pretrial Conference for July 10, 2023. (*See* ECF No. 105.) On May 30, 2023, however, this action was transferred to the undersigned. (*See* ECF No. 113.) After resolving several scheduling conflicts, the Court ultimately set the Final Pretrial Conference for Thursday, August 17, 2023, at 3:00 p.m., and the trial for Monday, September 18, 2023, at 9:00 a.m. (*See generally* ECF No. 134.) In advance of the Final Pretrial Conference, the Parties submitted several filings for the Court's consideration. Plaintiff filed four Motions *in Limine*, (ECF No. 117), which Defendant opposed, (ECF No. 127). Each Party filed individual Proposed Jury Instructions, (ECF Nos. 125 (Plaintiff's), 128 (Defendant's))—which have been opposed, (ECF Nos. 133 (Plaintiff's), 132 (Defendant's))—as well as Joint Proposed Jury Instructions, (ECF No. 124). Additionally, each Party filed and emailed proposed verdict forms, (ECF Nos. 126 (Plaintiff's), 129 (Defendant's)). The Parties did not, however, file

/ / /

/ / /

proposed *voir dire* questions by August 3, 2023, as required by the Court's July 21, 2023, Order. (*Compare* ECF No. 118, *with* Docket.)[1]

At the Final Pretrial Conference on August 17, 2023, the Court tentatively denied the first and fourth Motions *in Limine* and granted the second and third. (*See* ECF No. 135; *see also* PTC Tr.) The Court also sought supplemental briefing on bifurcation and assumed damages. (*See* ECF No. 135; *see also* PTC Tr.) Supplemental briefing was due on or before August 28, 2023, and any responses in opposition were due on or before September 4, 2023. (*See* ECF No. 135; *see also* PTC Tr.) Both Parties timely filed their supplemental briefing, (*see* ECF Nos. 137 (Plaintiff's), 138 (Defendant's)), and responses in opposition to the opposing Party's briefing, (*see* ECF Nos. 140 (Plaintiff's), 139 (Defendant's)). This written Order now follows.

## ANALYSIS

### I. Bifurcation

Federal Rule of Civil Procedure 42(b) provides, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed R. Civ. P. 42(b). "Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district court to bifurcate a trial . . . ." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)). "A court might bifurcate a trial to 'avoid[] a difficult question by first dealing with an easier, dispositive issue,' or to avoid the risk of prejudice." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (alteration in original) (first quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001); and then citing *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996)). "Further, '[i]t is clear

---

[1] Defendant has since filed proposed *voir dire*. (*See* ECF No. 141.) If Plaintiff would like the Court to consider asking any additional questions during Court-conducted *voir dire*, he must file a set of proposed questions as soon as practicable.

that Rule 42(b) gives courts the authority to separate trials into liability and damage phases.'" *Id.* (alteration in original) (quoting *De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993); and then citing 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2390 (3d ed. 2016) ("The separation of issues of liability from those relating to damages is an obvious use for Federal Rule 42(b).")); *see also Arthur Young & Co. v. U. S. Dist. Ct.*, 549 F.2d 686, 697 (9th Cir. 1977) ("Bifurcation of the trial of liability and damage issues is well within the scope of a trial court's discretion under Fed.R.Civ.P. 42(b).").

Here, Defendant indirectly requested bifurcation by proposing a jury instruction used for punitive damages in bifurcated trials. (*See* ECF No. 124 at 7–10.) In response, Plaintiff objected to the use of the instruction, explaining, "while Plaintiff does not think it proper to brief the issue of bifurcation in an argument about jury instructions, when Defendant failed to make a motion under Rule 42 or a motion in limine, a bifurcated trial will not be convenient, will not avoid prejudice, and will not expedite the case." (*See* ECF No. 133 at 5.) At the Final Pretrial Conference, the Court acknowledged that "there has been a request, albeit not one that was, in [the Court's] opinion, properly noticed and filed, that we bifurcate the Proceedings." (PTC Tr. at 22.) The Court further indicated that its "tentative would be to bifurcate the proceedings" and invited the parties to "submit briefing on what can properly be argued to the jury in regard to any request for an award of damages." (*Id.* at 33.)

In his supplemental briefing, Defendant seeks an order bifurcating the trial into two distinct phases: phase one would address liability for defamation per se and phase two would address assumed and punitive damages. (*See* ECF No. 138 at 4.) If the Court denies this request, Defendant asks, in the alternative, that the Court bifurcate the trial as follows: phase one would address liability for defamation per se and assumed damages and phase two would address punitive damages. (*See id.* at 8–9.) According to Defendant, several factors weigh in favor of bifurcation: (1) liability and punitive damages are separable issues that require different burdens of proof; (2) evidence of Defendant's financial condition,

though relevant to punitive damages, is not relevant to liability and would be prejudicial; and (3) bifurcation will conserve judicial resources. (*See* ECF No. 138 at 3.)

The Court agrees that bifurcation of the liability determination from the punitive damages determination is convenient and will avoid prejudice. The punitive damages determination will involve distinct evidence and a higher burden of proof. During the punitive damages phase, the jury may properly consider evidence of the Parties' financial status. *See* CACI 3942. Yet that same evidence is not relevant—and indeed, is prejudicial—on the issue of liability. *See Adams v. Murakami*, 813 P.2d 1348, 1358 (Cal. 1991); *Ferraro v. Pac. Fin. Corp.*, 8 Cal. App. 3d 339, 349 (1970). Additionally, as discussed further in Section II, evidence of Plaintiff's involvement with Millennium might be relevant to the punitive damages determination but may not be admitted during the liability phase.

As the Court discussed at the Final Pretrial Conference, to succeed on his libel per se claim, Plaintiff must prove (1) that the people to whom the statement was made reasonably understand that the statement was about Plaintiff Howard Appel and (2) that Defendant Robert Wolf failed to use reasonable care to determine the truth or falsity of the statement. (*See generally* PTC Tr.) Meanwhile, to receive punitive damages, Plaintiff must prove that Defendant acted with malice. (*See id.* at 32 ("Judge Lorenz ordered that the plaintiff could not argue punitive damages based on fraud or oppression.").) Although the type of evidence used to establish malice will likely overlap with the type of evidence used to establish a failure to use reasonable care, the distinctions between the "burdens of proof" for each determination weigh in favor of bifurcation. *See Norwood v. Child. & Youth Servs., Inc.*, No. CV1007944GAFMANX, 2012 WL 12882757, at *3 (C.D. Cal. July 27, 2012). While Plaintiff need only prove a lack of reasonable care by a preponderance of the evidence, he must prove malice by clear and convincing evidence. (*See* ECF No. 138 at 3–4.)

Therefore, the Court concludes that prejudice will be minimized if the jury determines liability during the first phase and, if there is a finding of liability, it decides

whether to impose punitive damages and if so, how much, during the second phase. Because the Court concludes that Defendant's proffered evidence of Plaintiff's bad acts is inadmissible to mitigate assumed damages, *see infra* Section II, and because Plaintiff's counsel has represented that it will be seeking assumed damages "[w]ithout evidence," based purely on "[t]he good sense of the jury," (*see* PTC Tr. at 26), the Court concludes that the same type of evidence will be presented on the issue of liability and the issue of assumed damages. Therefore, it will be more efficient and convenient for the jury to analyze assumed damages during the first phase of the trial.

In sum, the Court concludes that it is appropriate to **BIFURCATE** the trial as follows: phase one will address liability for defamation per se and assumed damages; and if there is a finding of liability, phase two will address whether to impose punitive damages and if so, in what amount.

## II.   Motions in Limine

The Court **REVISES** its tentative rulings, as follows: (1) the first Motion *in Limine* was tentatively denied and that ruling is affirmed; (2) the second Motion *in Limine* was tentatively granted and that ruling is affirmed; (3) the third Motion *in Limine* was tentatively granted and is now granted in part and denied in part; and (4) the fourth Motion *in Limine* was tentatively denied and that ruling is affirmed. (*See* ECF No. 135; *see also* PTC Tr.) In short, the Court affirms the following rulings: Plaintiff's first Motion to exclude testimony from the attorneys who received the email with the allegedly libelous statement is denied because such testimony is relevant to the second element of the defamation per se claim; the second Motion to exclude testimony or argument that Plaintiff's republication of the allegedly libelous statement caused his damages is granted because Judge Lorenz previously ruled that such an argument was prohibited; and the fourth Motion to exclude various exhibits as irrelevant is denied as premature but may be renewed as the exhibits are presented at trial. (*See generally* PTC Tr.) The Court, however, revises its ruling on the third Motion as follows.

/ / /

| | |
|---|---|
|1| Through the third Motion *in Limine*, Plaintiff moved to exclude testimony and |
|2| evidence related to his involvement with Millenium Healthcare. (*See* ECF No, 117 at 8– |
|3| 10.) Plaintiff brought this Motion in response to Defendant's assertion, reflected in the |
|4| Proposed Pretrial Order, that he intends to elicit testimony from Plaintiff regarding |
|5| "allegations that he was involved in securities fraud while he was the president of |
|6| Millennium Laboratories ('Millennium'); allegations that he was involved in Medicare |
|7| fraud while he was the president of Millennium; the effect these Millennium allegations |
|8| had on him and his reputation; and his involvement in the Millennium securities fraud." |
|9| (*See id.* at 8–9.) Plaintiff argues that any such testimony is improper because the Court |
|10| quashed all subpoenas related to Millennium and granted summary adjudication in |
|11| Plaintiff's favor on Defendant's unasserted affirmative defense of truth. (*See id.* at 10.) In |
|12| granting summary judgment in Plaintiff's favor on the affirmative defense of truth, the |
|13| Court held that Defendant could not argue his statement about Plaintiff's alleged securities |
|14| fraud with Montrose and Winston was true because Plaintiff allegedly engaged in Medicare |
|15| fraud with Millenium. (*See* ECF No. 104 at 8.) Therefore, Plaintiff argues, any evidence |
|16| related to Millennium is irrelevant and would "smear Appel and confuse the jury." (*See* |
|17| *id.*) |
|18| In response, Defendant argues that such evidence is "directly relevant to the question |
|19| of Plaintiff's presumed damages given the fact that Plaintiff has alleged reputational harm |
|20| as well as harm from shame, mortification, or hurt feelings . . . ." (*See* ECF No. 127 at 9.) |
|21| Defendant points to the high bar to exclude prejudicial evidence under Rule 403 and argues |
|22| that evidence of Defendant's wrongdoing would "undoubtedly assist the jury in |
|23| determining the presumed damages awardable." (*See id.*) In short, Defendant argues that |
|24| because assumed damages are intended to compensate for assumed harm to Plaintiff's |
|25| reputation, Defendant should have the opportunity to introduce evidence that demonstrates |
|26| Plaintiff did not have a very strong reputation before the alleged harm occurred. |
|27| Plaintiff in turn points to the Order on the Cross-Motions for Summary Judgment, |
|28| which stated, "[a] plaintiff may receive compensation 'for harm to reputation or shame, |

mortification, or hurt feelings,' known as assumed damages, even if he has not proved any actual damages, because the law assumes he has suffered this harm." (*See* ECF No. 117 at 8 (citing ECF No. 104 at 12 (citing CACI 1704; *Barnes-Hind, Inc.*, 181 Cal. App. 3d at 382)).) Indeed, the Court relied on *Barnes-Hind, Inc.* for the proposition that upon a finding of libel per se, "damage to plaintiff's reputation is *conclusively presumed* and he need not introduce evidence of actual damages in order to obtain or sustain an award of damages." (*See* ECF No. 104 at 12 (emphasis added).) *See also Barnes-Hind, Inc.*, 181 Cal. App. 3d at 382. In accordance with *Barnes-Hind*, Plaintiff has proffered that he does not intend to present any evidence of harm to support his request for $500,000 in assumed damages. (*See* PTC Tr. at 26 (plaintiff's counsel representing that he will be seeking assumed damages "[w]ithout evidence" and based purely on "[t]he good sense of the jury").)

Both Parties agree that if liability is established, there is a conclusive presumption that Plaintiff must receive at least a nominal sum of assumed damages. (*Compare* ECF No. 128, *with* ECF No. 125; *see also* PTC Tr. at 21.) In accordance with this understanding, the Parties have each included a proposed jury instruction based on the following CACI 1704 instruction:

> Even if [name of plaintiff] has not proved any actual damages for harm to reputation or shame, mortification, or hurt feelings, the law assumes that [he/she/nonbinary pronoun] has suffered this harm. Without presenting evidence of damage, [name of plaintiff] is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable. You must award at least a nominal sum, such as one dollar.

(*Compare* ECF No. 128, *with* ECF No. 125.)

The remaining question, however, is whether Defendant is permitted to offer evidence of Plaintiff's poor reputation or prior unlawful conduct with Millennium to assist the jury in determining what sum of nominal damages to award. The Court permitted argument on the matter during the Final Pretrial Conference and invited supplemental briefing from the Parties. (*See* PTC Tr. at 33.) The arguments raised in the Parties'
///

supplemental briefing largely mirrored those arguments presented at the Final Pretrial Conference and in the prior briefing on the Motions *in Limine*.

Plaintiff points to several cases that stand for the well-established principle that a plaintiff need not introduce any proof of harm to receive assumed damages. (*See* ECF No. 137 at 13–15.) The Court agrees: it is not necessary for Plaintiff to present evidence to explain why he seeks the amount of assumed damages he does.[2] Yet, that is not the question here. The question is whether Defendant can present evidence to support his argument that the jury should award a lesser amount than the $500,000 in assumed damages that Plaintiff seeks.

On this point, Defendant points to two California supreme court cases involving alleged libelous statements: *Davis v. Hearst*, 160 Cal. 143 (1911), and *Turner v. Hearst*, 115 Cal. 394 (1896). In *Turner*, a libel per se case, the court permitted the plaintiff to introduce evidence of his reputation and the state of his business prior to the libelous statement. *See* 115 Cal. at 399. In reviewing the lower court's decision, the California supreme court held:

> It was not error for the [district] court to allow proof of the extent of plaintiff's practice. Plaintiff was a lawyer, engaged in the practice of his profession. The words of the publication being admittedly libelous per se, and affecting plaintiff's standing in his profession, it was proper for the jury, in estimating the general damages to which plaintiff was thus entitled, to know his position and standing in society, and the nature and extent of his professional practice. General damages, in an action where the words are libelous per se, are such as compensate for the natural and probable consequences of the libel; and certainly a natural and probable consequence of such a charge against a lawyer would be to injure him in his professional standing and practice.

---

[2] The rationale for allowing a plaintiff to recover for assumed harm without a showing of "any specific harm to [their] reputation or any other loss caused thereby" is that "in many cases the effect of defamatory statements is so subtle and indirect that it is impossible directly to trace the effects thereof in loss to the person defamed." Restatement (second) of Torts § 621 cmt. a (Am. L. Inst. 1938); *see also Weller v. Am. Broadcasting*, 232 Cal. App. 3d 991, 1014 (1991); *Di Giorgio Fruit Corp. v. AFL-CIO*, 215 Cal. App. 2d 560, 577 (1963).

*See id.* In short, *Turner* stands for the principle that a plaintiff may introduce evidence of their general standing in society and business to provide the jury with context for the assessment of assumed damages. Indeed, it is well-established that a plaintiff seeking assumed damages *may*, but is certainly not required to, introduce evidence to support the requested damages amount. *See, e.g.*, *Sommer v. Gabor*, 40 Cal. App. 4th 1455, 1471 (1995). *Turner*, however, does not address whether a defendant can introduce evidence of the plaintiff's poor standing in society to mitigate an assumed damages award.

The Court now turns to *Davis*, the second case relied upon by Defendant. In that case, the California supreme court stated:

> The libelous articles [published by defendant] contained in various forms the assertion of the existence of rumors reflecting on plaintiff. . . . The [district] court refused to admit evidence of the existence and character of these rumors, which evidence, it is insisted, was admissible in mitigation both on the question of compensatory damages, and to negative malice as the foundation for exemplary damages. For neither purpose, however, was the evidence admissible. It is, of course, well settled that defendant may impeach the reputation of plaintiff generally or as to the particular qualities embraced in the libel for the purpose of reducing compensatory damages. But it is equally well settled that he may not do this by showing either rumors of general ill-repute or rumors of ill-repute as to the particular matter charged in the libel.

160 Cal. at 182. Ultimately, the court held that a defendant may use "evidence in mitigation to rebut evidence of special damages,[3] and evidence of bad reputation to lessen the award in compensatory damages." *See id.* at 175. It is unclear, however, whether this holding extends to evidence used to lessen an award of assumed/presumed damages. *See e.g., Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 753 n.37 (1989) (distinguishing between compensatory damages, presumed damages, and punitive damages in libel actions);

---

[3]   "'Special damages' means all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a (2017).

*Turner*, 115 Cal. at 394 (referring to assumed damages as "general damages"). The California supreme court has held that "[i]f [a] plaintiff's reputation was to any degree bad before the [libelous statement] in question was published, that fact may be taken into consideration by the jury in fixing the amount of *actual damages* suffered." *Hearne v. De Young*, 132 Cal. 357, 362 (1901) (emphasis added); *see also Bertero v. Nat'l Gen. Corp.*, 13 Cal. 3d 43, 64 (1974). The same conclusion has not been reached regarding assumed damages.

The California supreme court's statements in *Davis* were later clarified by the state appellate court in *Clay v. Lagiss*, 143 Cal. App. 2d 441 (1956). In *Clay*, a libel per se case, the district court disallowed evidence that the person who heard the defendant's allegedly libelous statement still held the plaintiff in high regard. *See id.* at 447–48. In affirming this decision, the appellate court explained:

> Defendant apparently claims this [evidence] was an effort to show mitigation of damages in view of the fact that plaintiff alleged that she sustained mental suffering, shame, mortification and injury to her personal and business reputation. However, as we have already noted, plaintiff pleaded general, not special, damages and where, as here, the utterance is slanderous per se, damages are presumed and *evidence tending to show lack of injury to the reputation is inadmissible*.

*Id.* (emphasis added); *see also Unsworth v. Musk*, No. 2:18-CV-08048-SVW-JC, 2019 WL 8221086, at *3 (C.D. Cal. Nov. 27, 2019) (allowing defendant to introduce evidence of lack of injury because plaintiff was seeking actual damages in addition to assumed damage). In short, *Clay* held that when the plaintiff in a libel per se case only seeks assumed damages, the defendant cannot introduce evidence of a lack of injury. *See* 143 Cal. App. 2d 447–48; *see also Santo v. EFCO Forms*, No. CV-F-04-6401LJO, 2005 WL 8176409, at *2–3 (E.D. Cal. Sept. 21, 2005); *Allard v. Church of Scientology*, 58 Cal. App. 3d 439 (1976), *cert. denied*, 429 U.S. 1091 (1977) (finding, in a malicious prosecution case, the plaintiff "was allowed to claim damage to reputation without allowing [defendant] to introduce evidence of [plaintiff's] prior bad reputation.").

/ / /

In light of the foregoing, the Court concludes that Defendant may not use evidence of Plaintiff's purported misconduct with Millennium or his poor reputation to argue "a lack of injury." *See Clay*, 143 Cal. App. 2d 447–48. *Turner* supports the well-established proposition that a plaintiff may introduce specific evidence of harm when seeking assumed damages and *Davis* supports the proposition that a defendant may introduce evidence to mitigate harm when the plaintiff seeks actual damages; however, neither case establishes that a defendant may introduce evidence to mitigate assumed damages when the plaintiff has not opened the door by introducing evidence to support assumed damages. Accordingly, the Court **GRANTS IN PART** Plaintiff's third Motion *in Limine* insofar as it seeks to exclude evidence of Plaintiff's misconduct with Millennium from the first phase of the trial, which addresses liability and assumed damages. However, the Court **DENIES IN PART** Plaintiff's Motion insofar as the same evidence may be relevant to the punitive damages determination and therefore, may be admissible during the second phase of the trial.

## CONCLUSION

In light of the foregoing, the Court **BIFURCATES** the trial on September 18, 2023, as follows: during the first phase, the jury will determine whether Defendant is liable and if so, they will determine what amount of assumed damages to award; if Defendant is found liable, during the second phase the jury will determine whether to award punitive damages and if so, in what amount. Additionally, the Court **REVISES** its tentative rulings, as follows: all rulings are affirmed except the Court's ruling on the third Motion *in Limine*. That Motion was tentatively granted and is now granted in part and denied in part; the Motion is granted insofar as testimony and evidence related to Millennium is excluded from the liability and assumed damages phase of the trial, and it is denied insofar as

/ / /
/ / /
/ / /
/ / /

testimony and evidence related to Millennium may be relevant to the punitive damages phase.

**IT IS SO ORDERED.**

Dated: September 12, 2023

_____
Honorable Todd W. Robinson
United States District Judge